Nicholas Berkos, Appellee, v. Aetna Life Insurance Company, Defendant. Felix de la Rosa, Intervening Petitioner, Appellant.

Gen. No. 37,821.

244

Opinion filed February 25, 1935.

HUBBARD, BAKER & RICE, of Chicago, for appellant.

DAVIS P. BUZANE, NICHOLAS BERKOS, STEVEN C. SPENCER and THOMAS FILLMORE, all of Chicago, for appellee; STEVEN C. SPENCER, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Berkos, an attorney, on March 7, 1934, filed in the circuit court a petition for an attorney's lien under the statute (Cahill's Ill. Rev. Stats. 1933, ch. 13, ¶ 13, p. 148) upon the proceeds of two certificates issued to Candelario de la Rosa under a group life insurance policy. Aetna Life Insurance Co., named as defendant, appeared and answered the petition, and Felix de la Rosa (father of Candelario) was granted permission to intervene and also filed an answer. The court heard the evidence and April 24, 1934, entered a decree awarding a lien to petitioner in the sum of $666.66, with costs.

De la Rosa, intervening petitioner, has perfected this appeal. The claim of petitioner for lien was based on an alleged contract with Candelario de la Rosa. Assuming that insertions in longhand superseded stricken out portions of the contract, it reads as follows:

"Chicago, May 8, 1933

"I hereby employ Nicholas Berkos, attorney, to prosecute all claims for damages against Aetna Life

Ins. Co. on account of total disability provision on the 18 day of March A. D. 1933, and in consideration of his services, I agree to pay him a sum of money equal to One Third ⅓ of any amount collected from said claim and assign to him One Third ⅓ of any judgment hereafter recovered in said case.

"Candelario de la Rosa

"We hereby agree to make no charge unless recovery is had in above matter, and no settlement without consent of claimant.

"Nicholas Berkos

"Albino Soria
Witness"

The evidence in the case tends to show that Candelario was a Mexican laborer employed by Swift & Co. He was the owner of two certificates of interest for the sum of $1,000 each in a group life insurance policy so-called, issued by the Aetna Life Insurance Co. in favor of the members of Swift & Co. Employees Benefit Association. His father, Felix de la Rosa, the intervenor, was beneficiary of one certificate; the other was payable to his estate. The benefits of this insurance were administered by the Employees Benefit Association, which was maintained by persons employed by Swift & Co. This association assisted members in collecting the amount due without making any charge for such services. Candelario was a member of the organization and entitled to its services and benefits. F. B. McAdow of Swift & Co. was manager and Mr. Randall, also of that company, was assistant manager. These certificates entitled Candelario to accident and sickness benefits.

Some time prior to March 20, 1933, Candelario became ill and on that date began to receive payments of sick benefits after examination by Dr. Summer, a physician of Swift & Co. His illness was first said to be appendicitis; he was taken to the County Hospital and about May 18th thereafter his disease was diag-

nosed as tuberculosis; he left the hospital June 24th and was brought to the home of Miguel and Inocinci Hernandez, the wife of Miguel, and he died at their home on July 16th.

The group insurance policy contained a provision known as the total disability clause. It provided in substance that if any member before attaining the age of 60 years should become totally disabled and presumably thereafter during his life unable to engage in any occupation or employment for wage or profit, "upon receipt at the Home Office of the Aetna Life Insurance Company, during the continuance of insurance on such member, of satisfactory evidence of such disability, the said Insurance Company will pay the amount of insurance in force upon such life at the time such disability commenced, in lieu of all other benefits provided for on such life under the said policy and riders."

The supposed employment of petitioner as attorney was for the purpose of obtaining for Candelario the benefits of this clause in his lifetime. Petitioner did not negotiate for nor secure the supposed contract directly. His negotiations were conducted and consummated through the interposition of Albino Soria, who witnessed the signature of deceased, and Cruz Maldonado, who acted as interpreter at the request of Soria. Maldonado translated the written English of the contract into Spanish language, which was apparently the native language of Candelario.

Soria testifies that Candelario sent for him the 3rd of May and that he went to see him the following day. Deceased then asked him if he knew some lawyer who could handle his case, "get some money." Soria says he told him he knew Steven Spencer; that thereafter witness went to Spencer's office, where the girl at the desk told him Spencer was not there but that he could talk to Mr. Berkos. Berkos then told him he could

handle the case but that he did not have any blank contracts that day. Witness says he afterward gave this information to Candelario who told him that if this lawyer was all right to go and get the papers to sign. Soria went back on the 6th, got the papers and took them to Candelario and read them over to Candelario three or four times; Soria says that after Candelario signed he said "he was satisfied and he signed and he said $100 was to be paid to his attorney." Soria says he then took the certificates and the contract back to Berkos; that Candelario when he signed was at home and disabled, being unable to move out of bed.

Maldonado says that he was called by Soria May 4th; that Soria said he, witness, was wanted as an interpreter; that he translated the contract to Candelario, who said he was satisfied and signed. Soria and Maldonado both deny any financial interest, but a consideration of all the evidence makes it quite impossible to believe that their services were rendered upon an altruistic basis.

Berkos filed notice of lien under his contract with the Aetna Life Insurance Co. Service was made personally and May 9th a copy of the notice was also sent by registered mail. May 11th he wrote making claim in behalf of Candelario for total disability on account of a tubercular condition of his client. The same day he wrote to Mr. Randall of Swift & Co. to the same effect and offered to co-operate in making the proofs. May 13th the Chicago office of the insurance company answered his letter of May 11th, stating that the claim had been forwarded to the home office. May 27th he was notified that the Employees Benefit Association had asked the insurance company to investigate the claim. May 29th the Aetna Casualty & Surety Co., apparently in behalf of the Aetna Life Insurance Co., wrote petitioner asking for copies of medical reports.

Petitioner took the matter up with Mr. A. J. Hobson, claim adjuster for the insurance company, and told him he had a report from the doctor who had been regularly attending Candelario, but Hobson said he wanted another. Petitioner testifies he got his own family doctor and had him prepare a report. He sent the reports to Hobson June 9th with a written request for settlement dated June 7th, signed by Candelario and witnessed by Maldonado.

While the matter was pending Candelario died. The proposed settlement had at that time been approved by the home office of the Aetna Life Insurance Co., but the check had not been delivered to the Benefit Association, as was the usual practice in such cases. The Benefit Association refused to pay without a release from the beneficiary of the one policy, Felix, and a like release by the administrator of Candelario's estate.

The intervenor contends that the contract was actually with Steven Spencer, not Nicholas Berkos; but that contention cannot, in our opinion, be sustained. It is apparent that Berkos and Spencer had offices and worked together, and the contract was written upon a printed form of contract provided by Spencer. His name, however, was eliminated, and the written contract was with Berkos, although Spencer may have been also interested in it and although the proof shows that he did part of the work in connection with the claim. These lawyers were apparently accustomed to work with and for each other. The actual written contract, however, was with Berkos. He gave notice of the lien, and if a lien is to be allowed he, only, is entitled to it.

A closer question is raised by the contention that the contract was in its nature unreasonable and unconscionable. It is stated in Mechem on Agency, vol. 2, sec. 2236:

"Contracts of this nature, however, to be enforced, must appear not to be excessive or extortionate, and to have been fairly made, after full information and without undue advantage being taken of the ignorance or necessities of the client."

The compensation provided for the attorney under the terms of this contract is unfair and excessive. The services he was required to perform thereunder were not onerous nor did they call for the exercise of unusual professional skill. The evidence shows that the Benefit Association, to whose services Candelario was entitled, could have performed all the services required and would have done so without any compensation. The services of the attorney might have hurried the matter up a little; he could not do much more. The claim was not in any sense contested. The client was evidently poor—a stranger somewhat unfamiliar with the language and the customs of the country in which he lived. A member of the bar in such case owes to a prospective client and to the community a duty which he should not be slow to perform. The record shows that Soria said that Candelario was told the fee was to have been $100. Petitioner says that the record does not speak the truth in this respect. We must assume it does. The statement of petitioner cannot be received to contradict the record.

It is difficult to believe that the deceased would with knowledge agree to pay $666.66 for the services it was necessary for petitioner to perform. We must hold the contract, as it appears, unconscionable, and that no attorney's lien can be based upon it for that reason. *Pratt v. Kerns,* 123 Ill. App. 86; *Robinson v. Sharp,* 201 Ill. 86. The services here were not of a kind for which a contingent fee of one-third or one-half the amount recovered would be reasonable, as in cases upon which petitioner relies.

But there is another reason why the order allowing the lien may not be sustained. There is clearly noth-

ing due under the terms of the contract. It says: the client agrees to pay "One-third of any judgment hereafter recovered in said cause." No judgment has been recovered at any time. It says the client agrees to pay "a sum of money equal to One-third of any amount collected from said claim." The uncontradicted evidence is that no sum whatever has been collected. Conditions precedent have not been met. There is nothing due to claimant under the contract, and therefore no lien can be based on it.

For the reasons indicated the order of the trial court allowing the lien must be reversed.

*Reversed.*

O'CONNOR, P. J., and McSURELY, J., concur.