In Matter of Estate of Anthony J. Klappa, Deceased. Mary Klappa, Executrix of Estate of Anthony J. Klappa, Deceased, Appellee, v. Edmund J. Johnson, and E. R. Borgmeier, Appellants.

Gen. No. 47,312.

First District, Third Division.

July 3, 1958.

Rehearing denied October 2, 1958.

Released for publication October 2, 1958.

Edmund J. Johnson, and E. R. Borgmeier, of Washington, D. C. (E. R. Borgmeier, of counsel) pro se, appellants.

Wexman & Mandel, and Marcus Wexman, of Chicago (Marcus Wexman, and Richard L. Mandel, of counsel) for appellees.

PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Edmund J. Johnson and E. R. Borgmeier, respondents, appeal from an order of the Superior Court denying fees to them as attorneys for Mary Klappa, executrix of the estate of Anthony J. Klappa, deceased.

Anthony J. Klappa died testate on July 4, 1955, leaving his entire estate to Mary Klappa, his widow and naming her executrix under the will. No children were ever born to the decedent, nor did he ever adopt any, but he left him surviving, in addition to his widow, Joseph and William Klappa, his brothers, and two nieces, daughters of a predeceased sister. Anthony Klappa's will was admitted to probate in the Probate Court of Cook County on August 18, 1955, following an unsuccessful contest by his brothers. Thereafter Mary Klappa qualified as executrix, gave her individual bond and acted as executrix until August 17, 1956. Respondents were retained by Mary Klappa on July 4, 1955 to represent her individually and as executrix. Between that date and August 17, 1956, seventeen separate legal proceedings were pending, either before a court or a master in chancery, with innumerable motions made almost daily. These proceedings, all participated in by respondents, covered a wide range: they included a partition suit in the Superior Court, two

estate matters in the Probate Court, two appeals from orders of the Probate Court, a will contest, as well as a petition for a general accounting, both filed in the Circuit Court, and eight Superior Court mandamus proceedings challenging orders entered in the Probate Court from time to time.

On August 17, 1956 Mary Klappa was removed as executrix of the estate; on that same day Judge Seidel appointed George M. Schatz as administrator de bonis non with will annexed of the estate, and shortly thereafter Marcus Wexman entered his appearance as attorney for Schatz.

Subsequently, on February 20, 1957, Schatz, after notice by mail upon respondents, who then resided elsewhere than in Chicago, presented a verified petition to the Probate Court, and on that date Judge Dunne entered an order based on the petition ordering respondents to file their petition for fees in the estate within fifteen days and fixing ten days thereafter within which Schatz, as petitioner, could reply. The matter was set for March 27, 1957 before Judge Seidel for hearing on the question of respondents' fees as attorneys for Mary Klappa, executrix; Judge Seidel, on that same day, entered an order denying fees to respondents as attorneys for the executrix. Neither of them appeared on that date, nor did they file any petition for fees as directed. Thereupon respondents took an appeal to the Superior Court from the order of Judge Seidel, and shortly thereafter filed their motion for summary judgment before Judge McKinlay of the Superior Court. After hearing the arguments of counsel, including that of E. R. Borgmeier, Judge McKinlay on June 12, 1957 entered an order denying the motion for summary judgment and found: (1) that the Probate Court had jurisdiction over the subject matter of fixing the fees of respondents as attorneys for the

503

executrix; (2) that the Probate Court had jurisdiction of the persons of both respondents by virtue of their having been attorneys for Mary Klappa, executrix, and also by reason of their having submitted themselves to the jurisdiction of the court in filing their appeal bond; (3) that respondents had due notice of all proceedings relative to fixing and determining their fees, if any; and (4) that the Superior Court had jurisdiction of both the subject matter and the parties, and that respondents had submitted themselves to the jurisdiction of the Superior Court by filing their appeal from the order of the Probate Court, and also by filing their motion for summary judgment. Judge McKinlay's order also provided that respondents should have fourteen days within which to file their petition for fees, and also set a day certain for hearing of the matter. Respondents failed to file their petition for fees or to appear in court on the day of the hearing. Accordingly, on July 1, 1957, Judge McKinlay heard evidence and entered an order denying fees to respondents as attorneys for Mary Klappa as executrix. It is from this order that respondents appeal.

Respondents have filed a voluminous brief and injected into this appeal many extraneous matters. However, the relevant facts are limited to the evidence presented to Judge McKinlay as to the nature and effectiveness—and value in fees—of the services performed for Mary Klappa by respondents. In their brief, respondents state that they worked over 3000 hours for the estate, but on hearing they did not see fit to introduce any testimony, any time sheets, or other evidence which would be subject to cross-examination, either at the trial before Judge McKinlay or in the Probate Court. Petitioner's counsel do not question that respondents performed some services but

"vigorously" deny "the merit, value, necessity [or] benefit to the estate . . . of the work performed"; they contend, rather, that the services rendered by respondents, if they were in excess of 3000 hours, as alleged, were occasioned by the respondents' belief that the Klappa Brothers' partnership (between the deceased Anthony Klappa and his two brothers) had cash in an amount of $200,000 to $250,000 hidden away. There is no such evidence in the record, nor throughout all the litigation, that any such sum, supposedly belonging to the partnership, was in existence. "Respondents," say petitioner's counsel, "attempt to go back fifty years to try to substantiate the statement that the partnership had a cash hoard of more than $200,000.00 . . . and still failed to find one red cent, while causing the expenditure by the estate of nearly $10,000.00." For the services alleged to have been rendered by respondents, they refer in their brief to an agreed fee of $50,000, without stating when or by whom it was so agreed. There is no evidence in the record to afford any basis for the claimed fee of $50,000. Respondents admit that they received $2,000 prior to their withdrawal as attorneys for Mary Klappa. The estate now in probate had total assets of approximately $42,000, and liabilities of approximately $12,000, including the $2,000 fee paid to the executrix' attorneys.

There are both statutory authority and sound logical reasons for the propriety of having fees for executors, administrators, conservators, and their attorneys fixed by the Probate Court, since that court is especially familiar with all the work necessary to be done in the orderly administration of estates; it is in that court that most of the proceedings usually take place. The legislature evidently recognized this by including in the Probate Act of 1939 specific authority

505

to fix attorneys' fees. Paragraph 491 of Chapter 3, Illinois Revised Statutes 1957, provides that "The attorney for an executor, administrator, administrator to collect, guardian or conservator shall be allowed reasonable compensation for his services." However, even before the passage of the 1939 Probate Act, which for the first time included the above provision, the Probate Court had assumed authority to fix attorneys' fees under a general authority; and since the passage of the Probate Court Act of 1939 the jurisdiction of the court to fix such fees has seldom, if ever, been questioned; and, of necessity, implicit in the authority to fix fees is the power to disallow or disapprove them. See Griswold v. Smith, 214 Ill. 323, wherein the Supreme Court said that "It is a matter peculiarly within the province of the probate judge to determine the proper amount of compensation to be allowed to an administrator or executor for his services . . ." And in the recent case of In re Estate of James, 10 Ill. App.2d 232, wherein the appellant sought to make a distinction between the power of the court to allow reasonable attorneys' fees and the power of the court to fix them, the court, in rejecting this distinction, unqualifiedly stated that "This is not the law," and later in the opinion said that "it would seem to be the law in Illinois, that the courts have not only the right but the duty, under the Probate Act, to fix and allow attorney's fees. And where a cause has been appealed from the County or Probate Court to the Circuit Court, the same right and duty extends to the Circuit Court."

The only other question which need be considered is whether the Probate and Superior Courts had jurisdiction over the persons of respondents in determining the question of attorneys' fees. Both respondents were attorneys of record in the estate over a period of time and had notice of all proceedings regard-

506

ing the determination of their fees. The decedent's estate was ready to be closed. The only question that had not been determined was respondents' claim for attorneys' fees; and since they had not seen fit to file a petition which would have enabled the Probate Court to determine the reasonableness of their fees, we think it was incumbent upon the administrator de bonis non with will annexed to make application to the court to exercise its duty to fix attorneys' fees. In the administration of an estate the executor or his attorney often makes application to the court to fix fees at the time of the filing of the current or final accounts, but this is not the only proper way of making application for fees. In many instances, as in the case at bar, a separate petition is filed. Petitioner could have waited until filing of the final account, but undoubtedly he anticipated that this question would be litigated and therefore served notice on respondents and filed a petition for the court to make a determination on the question of fees so that the estate could be closed without undue delay and in an orderly manner. Although neither of respondents had filed a petition in the court, they had served notice upon various people of their claim to an additional $50,000 as attorneys' fees. As to the question of jurisdiction of the Probate and Superior Courts over respondents, it appears that they voluntarily submitted themselves to jurisdiction in the Probate Court, as well as in the Superior Court, by appealing the order of the Probate Court to that Court. The courts of this State have long held that special and limited appearances must actually be so limited, and that the moving party cannot bring in any other matters. People v. Estep, 6 Ill.2d 127. In the instant proceeding, respondents included in the transcript they presented to the Superior Court, not only the matters relating to the order of March 27, 1957 and the ques-

tion of jurisdiction over them, but they also included accountings, inventories, bills, petitions, many motions, objections, orders allowing fees to other attorneys, the settlement agreement in the accounting suit which had been filed in the Superior Court, and divers other matters, all unrelated to the jurisdictional question but intended to pertain to the question whether respondents were entitled to additional fees. By so including these unrelated matters, respondents voluntarily submitted their persons to the jurisdiction of the Probate and Superior Courts. The major portion of the abstract filed by the respondents contains references to matters unrelated to the jurisdictional question. In their brief they seek to re-argue the partition suit, and the accountings filed in the Probate Court; they re-argue the replevin suit which was one of the many proceedings filed by them; and parenthetically they argue the principal question in controversy, whether the order of July 1, 1957 was properly entered.

In the opening statement of their brief, respondents correctly state that this appeal is taken from the order of Judge McKinlay denying fees to respondents as attorneys for the executrix of the estate of Anthony J. Klappa, deceased. Nevertheless they have asked this court to reverse practically every order entered in the various proceedings heretofore enumerated, and are attempting to attack collaterally rulings in these various proceedings.

It has often been said that in all litigation there must be an end. "It is just as important that there should be a place to end as that there should be a place to begin litigation." Stoll v. Gottlieb, 305 U. S. 165. And see Groves v. Illinois Publishing & Printing Co., 327 Ill. App. 544. There must be an end to the litigation in the estate of Anthony J. Klappa so that it may be closed. Respondents were twice afforded an opportunity to

508

present their petition for the additional fees claimed by them; they refused to do so although, as we hold, the court had jurisdiction to require them to do so. Accordingly, the order of the Superior Court from which this appeal is taken is affirmed.

Order affirmed.

BRYANT and BURKE, JJ., concur.