692 F.2d 1107
 Edward Nils ROSQUIST, Administrator of the Estate of Norie
Rosquist, Deceased, Plaintiffs-Appellees,
v.
The SOO LINE RAILROAD, Defendant,
Robert Willrett, Intervenor-Appellee.
Appeal of WILLIAM D. MADDUX & ASSOCIATES, Appellant.
 Nos. 81-2693, 81-2927.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 13, 1982.
Decided Nov. 10, 1982.
 
 William D. Maddux, Chicago, Ill., for appellant.
 Charles M. May, Waukegan, Ill., for plaintiffs-appellees.
 Before CUMMINGS, Chief Judge, and DAVIS,* and PELL, Circuit Judges.
 DAVIS, Circuit Judge.
 
 
 1
 This consolidated appeal challenges the District Court's award of attorneys' fees in an accident case tried in that court under its diversity jurisdiction. In October 1975 Norie Rosquist and her two children, Nina and Edward, Jr., were in an automobile as it was struck by a Soo Line Railroad train. Norie Rosquist was killed, Nina was very seriously injured, and Edward, Jr. sustained lesser injuries. Edward Rosquist, Sr., the surviving husband and father, initially retained Milton Zacksman and James A. Dooley to represent the interests of himself, Norie's estate, and the children in suit against the Railroad. Later, William D. Maddux and Associates, the appellant here, succeeded as plaintiffs' counsel. The retainer agreement provided that the attorneys were to receive one-third of the award (less costs) in the event they won or settled the case.
 
 
 2
 After suit was filed, it was removed from the Circuit Court of Cook County to the District Court for the Northern District of Illinois, Eastern Division. Following some preliminary motions, depositions, and discovery, counsel presented in January 1979 for the district court's approval a dismissal order and settlement agreement. Under the proposed "structured settlement," Nina and Edward, Jr. were to receive a small lump sum initially and periodic payments for quite some time thereafter. Edward, Sr. was to receive nothing.[1] The total present value to the plaintiffs of the proposed settlement was (according to appellant's expert) approximately $304,874. The agreement provided that attorney's fees were to be paid separately by the Railroad, but did not specify an amount. Upon inquiry, the judge learned that the fee was to be $250,000, payable in five yearly $50,000 installments. The 1979 present-value of that fee (according to the same source) was $223,006.
 
 
 3
 Judge Grady rejected the settlement, stating that it was unclear in what circumstances the payments to Nina would continue until her death, it was uncertain whether payments to Nina would cover her future medical needs, and it was unlikely that the attorney's fees and trusteeship provisions would adequately protect Nina's interests. The court appointed a guardian ad litem to investigate the case and advise the court on Nina's behalf.
 
 
 4
 The case subsequently went to trial, and the jury awarded plaintiffs a total of $628,000:--$350,000 for Nina, $10,000 for Edward, Jr., $260,000 to Norie's estate, and $8,000 to Edward, Sr. for funeral expenses. The district court entered judgment on the verdict,[2] and ordered the guardian ad litem and plaintiffs' counsel to submit petitions for fees and expenses.[3] Judgment creditors of Edward Rosquist, Sr. were allowed to intervene. Plaintiffs' counsel, William D. Maddux & Associates (Maddux), filed a petition for $209,333--one-third out of the total recovery (less claimed costs). The court redetermined that fee and awarded $90,950 (somewhat less than 15% of the total judgment), reaffirming its determination on a petition to alter or amend that award. Counsel[4] then appealed from both the decision setting fees at $90,950 and the order denying the petition to amend that decision. (Those appeals were consolidated in this court).
 
 
 5
 Appellant argues four main points: (1) that the district court lacked jurisdiction because no case or controversy was before it, (2) that in any event the fee issue should have been sent to the state probate court, (3) that Judge Grady should not have passed upon the fee issue because he was prejudiced on that subject, and (4) that the one-third fee set by the fee-contract was reasonable and should have been upheld.[5] We reject those contentions and affirm.
 
 
 6
 * Article III of the United States Constitution requires a case or controversy as a prerequisite to the exercise of federal judicial power. Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 239, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). Maddux does not challenge the district court's jurisdiction over this diversity case as a whole or that there was a controversy between the Rosquists and the Railroad. But we are told that because neither party to the fee-contract (Rosquist, Sr. and the attorneys) challenges its validity or amount, no "case or controversy" is presented as to the subject of attorneys' fees. That proposition is simply incorrect in this case which was and is still quite alive with respect to the disposition of the fund before the district court. The special guardian appointed by the court had not yet been discharged; in fact, he defended this appeal on behalf of the children. Cf. Hoffert v. General Motors Corp., 656 F.2d 161, 164 (5th Cir.1981) (federal jurisdiction upheld partly because of appointment of guardian). Moreover, the court retained control of the fund provided by the defendant Railroad (pursuant to the judgment for plaintiffs) and the disposition of that fund was yet unsettled. Judgment creditors (from a previous action) of Edward Rosquist, Sr. had intervened to protect their interest in the fund and Maddux asserted a right to a portion of the fund for its fee. "[O]nce invoked, the equitable jurisdiction of the court was not exhausted until all claims against the funds in the registry of the court were adjudicated." Cappel v. Adams, 434 F.2d 1278, 1281 (5th Cir.1970). See Garrett v. McRee, 201 F.2d 250, 253 (10th Cir.1953).
 
 
 7
 Appellant cites Brown v. Watkins Motor Lines, Inc., 596 F.2d 129 (5th Cir.1979), to show that no case or controversy could exist. Brown is easily distinguishable because that case was actually over; no live controversy was then before the trial court. All that remained was for the court to release the judgment fund to the plaintiff. Id. at 132. In the present situation, in contrast, the district court had much more than pro forma ministerial tasks yet to perform, and the presence of the special guardian showed that the interests of minors were affirmatively to be protected. There was still a litigation which was fully alive, including the subject of proper legal fees. In these circumstances, it made no difference to the existence of a "case or controversy" that the adult parties to the contractual fee-arrangement (the older Rosquist and the attorneys) may have been satisfied with that agreement, or that the District Court itself raised and pursued the subject of the amount of the fee-award.[6] See, also, Part II, infra.
 
 II
 
 8
 Not only was there technical compliance with the constitutional demands of Article III, but there was no other adequate reason calling upon the district court to refuse to evaluate the fee to be paid to Maddux. Counsel fees have been subjected to such oversight when the client is unable fully to protect his own interests. For example, seamen (Schlesinger v. Teitelbaum, 475 F.2d 137 (3d Cir.), cert. denied, 414 U.S. 1111, 94 S.Ct. 839, 38 L.Ed.2d 737 (1973)), parties to a class action (Dunn v. H.K. Porter Co., 602 F.2d 1105, 1109 (3d Cir.1979)), and children (Cappel v. Adams, 434 F.2d 1278, 1280 (5th Cir.1970); Wiener v. United Air Lines, 237 F.Supp. 90, 96 (S.D.Cal.1964)), have all enjoyed the protection of federal courts from excessive fees. In ordinary circumstances, trial courts may have no reason to inquire into the terms of an attorney-client contract. But in this case there were two children, one severely injured, both deprived of their mother and in effect abandoned by their father. The children were unable to recognize actions against their interests and unable to assert their rights even if they suspected less than proper treatment. We cannot assume that counsel will necessarily protect those children's interests that are directly in conflict with his own financial well-being. Furthermore, we cannot presume that the father here will, by protecting his own interests, protect those of his children as well; he is sufficiently in debt that apparently he has little or no real personal interest in the outcome of the case--his share may well to go to his judgment creditors.[7]
 
 
 9
 The district court's appraisal of the amount of the fee is also justified by the court's inherent right to supervise the members of its bar. See Schlesinger v. Teitelbaum, 475 F.2d at 141 ("The district courts' supervisory jurisdiction over contingent fee contracts for services rendered in cases before them is well-established"). Even when the validity of the fee contract itself has not been challenged by the parties, it is within the court's inherent power of supervision over the bar to examine the attorney's fee for conformance with the reasonable standard of the Code of Ethics. Farmington Dowel Products Co. v. Forster Manufacturing Co., 421 F.2d 61, 90-91 (1st Cir.1970); Elder v. Metropolitan Freight Carriers, Inc., 543 F.2d 513, 518 (3d Cir.1976); Cappel v. Adams, 434 F.2d at 1280. Cf., Dunn, 602 F.2d at 1114 (district courts have authority to examine sua sponte attorney's fees pursuant to inherent supervisory power and the duties imposed by Fed.R.Civ.P. 23(e)); In Re Michaelson, 511 F.2d 882, 888 (9th Cir.), cert. denied, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975) (court has authority to inquire into fee arrangements to protect clients from excessive fees and suspected conflicts of interest). The courts have not automatically required the client to object to the fee agreement. As the First Circuit explained: "[t]hat a client, as here, remains willing to abide by his fee contract is relevant but not controlling, for the object of the court's concern is not only a particular party but the conformance of the legal profession to its own high standards of fairness." Farmington, 421 F.2d at 90 n. 62. Courts have a stake in attorney's fees contracts; the fairness of the terms reflects directly on the court and its bar.
 
 
 10
 We do not, of course, imply that the court should sua sponte review every attorney's fee contract. An agreement between two freely consenting, competent adults will most often be controlling; courts rarely interfere with such contracts. But that restraint is based on the presumption that the parties can identify their own interests, can assess their bargaining position, and are equally able to assert their position. But those normal assumptions are not fulfilled here; in the circumstances of this case, the district court was right to be wary not to become an unwitting accessory to an excessive fee, see Farmington, 421 F.2d at 87.
 
 
 11
 Appellant argues that, nevertheless, an Illinois state court would send this case to the state probate court for resolution of the attorney's fee because the latter court has jurisdiction over the attorney-estate relationship. Assuming, without deciding, that the diversity court should defer to that practice if a state trial court would defer, the question is whether an Illinois trial court would so act. The answer is that appellant's position is not well supported in Illinois law. Illinois decisions uphold the traditional power of courts to question attorney's fees. Pocius v. Halvorsen, 30 Ill.2d 73, 195 N.E.2d 137, 142 (1964); Berkos v. Aetna Life Insurance Co., 279 Ill.App. 243 (1935); Warner v. Basten, 118 Ill.App.2d 419, 255 N.E.2d 72, 79 (1969); Rosenthal v. First National Bank of Chicago, 127 Ill.App.2d 371, 262 N.E.2d 262, 265 (1970). And Illinois courts hold that minor litigants are wards of the court and the court is under a duty diligently to protect their interests. See Muscarello v. Peterson, 20 Ill.2d 548, 170 N.E.2d 564, 569 (1960); Frederick v. Zeigler Coal Co., 56 Ill.App.3d 888, 14 Ill.Dec. 534, 372 N.E.2d 730 (1978). Illinois law also insists that the court that heard a wrongful death case should distribute the proceeds of the judgment. "The amount recovered in any such [wrongful death] action shall be distributed by the court in which the cause is heard ...". Ill.Ann.Stat. ch. 70 Sec. 2 (Smith-Hurd 1981). See Estate of Murphy, 56 Ill.App.3d 1037, 14 Ill.Dec. 599, 372 N.E.2d 878, 880 (1978).
 
 
 12
 No authority cited by appellant persuades us that an Illinois trial court would be constrained from passing on the fee issue or that it would choose to transfer that question to the probate (or any other) court. The Illinois cases proffered by Maddux stand for the proposition that the attorney for an executor of an estate is entitled to fees, not that the probate court alone may set those fees.[8] Indeed, Estate of Klappa, 18 Ill.App.2d 501, 152 N.E.2d 754, 756-58 (1958), holds that there is no jurisdictional bar preventing the trial court from setting fees (in that case denying them) even when the entire matter is also within the jurisdiction of the probate court. It should not be surprising that this would be the rule. It makes sense to leave the discretion to set fees with the judge who has seen the preparation of counsel, heard the case, directly experienced the difficulty of the legal issues, and, for comparison, presided over similar trials in the past. See Allen v. United States, 606 F.2d 432, 436 (4th Cir.1979).
 
 III
 
 13
 Maddux contends that the District Judge was biased on the issue of contingent attorney's fees and that prejudice prevented a fair determination of the fee. Judge Grady had, in the past, written and spoken on the subject of contingent fees. He was not required, however, to recuse himself merely because he holds and had expressed certain views on that general subject. See Laird v. Tatum, 409 U.S. 824, 830-36, 93 S.Ct. 7, 11-14, 34 L.Ed.2d 50 (1972) (memorandum of Rehnquist, J.). His general tenets are not so case-specific that they would predetermine his position in this particular case, even if we should assume arguendo that specific views previously expressed outside of court could disqualify a judge. We do not doubt that appellant's fee contract and fee claim received unbiased and impartial review in the district court.
 
 IV
 
 14
 The remaining question is whether, granting the propriety of the district court's supervisory role, the court should have accepted the contractual fee, or could properly reduce it. Our standard of review is the traditional one: whether the district court abused its discretion by reducing the fee in this particular situation. See Hoffert v. General Motors Corp., 656 F.2d 161, 165-66 (5th Cir.1981); Cappel v. Adams, 434 F.2d 1278, 1280 (5th Cir.1970) (abuse of discretion standard for review of exercise of trial court's power to distribute judgment fund); Garrett v. McRee, 201 F.2d 250, 254 (10th Cir.1953); cf., Coffelt v. Shell, 577 F.2d 30, 32 (8th Cir.1978) (same standard for review of exercise of trial court's inherent supervisory powers). "The sum determined to be a reasonable attorney's fee is within the discretion of the district court; before a reviewing court should disturb the holding there should be a clear showing that the trial judge abused his discretion." Schlesinger v. Teitelbaum, 475 F.2d 137, 140 (3d Cir.), cert. denied, 414 U.S. 1111, 94 S.Ct. 839, 38 L.Ed.2d 737 (1973).
 
 
 15
 Stated another way, the standard is one of reasonableness. See, e.g., Pocius v. Halvorsen, 30 Ill.2d 73, 195 N.E.2d 137, 142 (1964); old Canons of Professional Ethics of the American Bar Association, Canon 13; Fitzgerald v. Freeman, 409 F.2d 427, 429 (7th Cir.), cert. denied, 396 U.S. 875, 90 S.Ct. 151, 24 L.Ed.2d 134 (1969). Analysis of the fee-contract's reasonableness is not limited to the face of the contract. Dunn v. H.K. Porter Co., 602 F.2d 1105, 1110 (3d Cir.1979)). The parties to this appeal agree, essentially, that the factors to be weighed when determining reasonableness are those set out in Carter v. Montgomery Ward and Co., 76 F.R.D. 565, 569 (E.D.1977).[9] We accept those factors as applicable here.
 
 
 16
 Maddux claims that the district court did not apply the criteria correctly. We disagree. As to the time and labor factor, counsel says that the 257 hours accounted for in the motion for fees is a skeletal number. He admits, however, that he kept no record of the time spent on the case. The district court found Maddux's 257-hour time estimate realistic, but generous, and accepted it for purposes of the fee calculation. It can hardly be an abuse of discretion for the trial judge to base the fee award on the number of hours submitted by the attorney. See Fitzgerald v. Freeman, 409 F.2d at 429 (attorney failure to provide time records precludes challenge to court's lack of time computations); International Travel Arrangers, Inc. v. Western Airlines, Inc., 623 F.2d 1255, 1278 (8th Cir.), cert. denied, 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980) (uncertainties arising from imprecise recordkeeping to be resolved against attorney).
 
 
 17
 The court's application of the next criteria, the novelty and difficulty of the case and the skill required to try the case, has not been seriously challenged. Maddux presents nothing showing this case to have been anything more than average in difficulty, and in some significant aspects even less than average. The facts and findings show that Mr. Maddux's performance was not so much above average as to justify an above-normal fee. In fact, his performance in some respects was far from strong. Before trial, during the settlement negotiations and up through his asking the court's approval of the settlement, Mr. Maddux was unaware that one of his clients, Edward, Jr., was a passenger in the car and sustained injuries in the accident.[10] Mr. Maddux also seems to have been unaware of the full extent of the injuries to Nina Rosquist. At the settlement hearing, he described her mental impairment as "memory problems" that were manifested in "the little things in her daily life" and he represented her overall intelligence to be above average. Yet, after an early (pre-settlement) examination, her doctor had described her injury as "severe brain damage" and at trial her teacher testified that she was three years behind her class in two important subjects. The trial judge considered the teacher's testimony as having an important bearing on the size of the jury's award to Nina. Moreover, Mr. Maddux was unsure of the present value to his client of the settlement he had negotiated.[11] Even at trial Mr. Maddux's performance was not consistently stellar; the teacher whose testimony established the practical extent of Nina's permanent injury was not called by plaintiffs. It is not clear that her critical testimony would ever have surfaced if she had not been called by the defendant. We cite these facts not to disparage the performance of counsel, but only to show that the District Court could properly consider the representation in this case not to warrant a larger fee.
 
 
 18
 The next issue concerns the scope of the "customary fee". Appellant argues that a third is one type of customary fee in personal injury cases. We do not disagree, but we also think that "customary fee", as used in the ABA guidelines, can also incorporate customary fixed-fee rates into the calculus of reasonableness. It is not inappropriate, therefore, for a trial court to compare the attorney's potential hourly award (under the contingent contract) to both the customary contingency percentage and the customary fixed-fee rate for a similar case. Similarly, it was not improper for the court to divide the requested fee by the tabulated hours. And we cannot say that the judge abused his discretion, in the circumstances of this case, by finding the resulting fee under the fee-contract ($813.57 per hour) to be unreasonable.
 
 
 19
 The contingent fee may not, of course, be compared directly to a fixed-fee; some adjustment must be made to compensate for the possibility that the attorney's payment depends on the existence and size of a favorable verdict. In recognition of this difference, the factors noted above, note 9, supra, ask whether the fee was fixed or contingent. However, the amount of adjustment should vary with the likelihood that the attorney will not be paid (or paid little)--the likelihood of an unfavorable verdict. In a case where there is very little chance of a successful verdict, a contingent fee may be reasonable even if it is far greater than a proper fixed fee for the same legal work. On the other hand, when a case is virtually certain to result in a large verdict, when both liability and great damages are easy to prove, the small chances of nonrecovery or of a small award can justify a correspondingly smaller increase in the attorney's fee. See Pete v. United Mine Workers of America Welfare and Retirement Fund of 1950, 517 F.2d 1275, 1290 (D.C.Cir.1975). The district court properly considered this contingency factor in setting a reasonable fee.[12]
 
 
 20
 The chances of success in this case varied on the different parts of the claim. Accordingly, it was not erroneous to calculate the fee separately for the different plaintiffs sharing the judgment. With respect to the fees on Nina's judgment, the district court had a right to consider that liability was nearly a foregone conclusion. The investigating officer's report showed the cause of the accident to be a faulty signal and, at least as to the children, there was no question of contributory negligence. The only argument against the Railroad's liability was the possibility that the signal control box had been vandalized, and the report seemed to settle that issue with its finding that the control box remained secure. At the hearing on the settlement, Mr. Maddux agreed with the court's summary characterization that "as to the daughter, it's total liability." As the court noted, the ability of the defendant to pay was likewise clear. The outcome on Nina's claim was thus never in substantial doubt; she would recover and her injuries were very severe. Judge Grady did say that at the trial "Mr. Maddux did present the evidence concerning Nina's case [i.e. the extent of her injuries] with intelligence and sensitivity. He argued it well to the jury", adding that "his performance may well have been a factor in the size of the verdict." The counterbalancing circumstances (considered by the court below) were that Maddux seems to have been pushed into inquiring into the full extent of Nina's injuries by the discussions at the settlement hearing and the special guardian's report to the court (after the proposed settlement was rejected and prior to trial). See supra. For those reasons, the court could permissibly decide that Maddux's fee should not be much greater than it would have been if fixed on an hourly basis. In this light, the $350 per hour granted by the judge was generous and certainly within the bounds of his discretion.
 
 
 21
 A recovery for the estate, unlike Nina's claim, was less sure. Contributory negligence on the part of Norie (the driver) had to be negatived. But that somewhat increased risk of no award could be considered offset by the defects in counsel's performance (particularly prior to trial). Again, we cannot say the $350 per hour allowed by the court is insufficient. As to the two small items in the verdict, the funeral expenses and Edward, Jr.'s claim, the district court found that neither required much work or was difficult to pursue. On the funeral expenses, counsel needed only to gather and present the bills, and on Edward, Jr.'s claim, liability was clear and defendant conceded some injury. Here, too, the judge did not abuse his discretion by setting the fee at something above $350 per hour.
 
 
 22
 On the whole case, we add that this trial judge has had much experience with this type of litigation, and we cannot find his determination of the maximum allowable hourly rate to be an abuse of his discretion, unreasonable, or clearly erroneous.
 
 
 23
 Both the decisions and common fairness require that a trial court adequately explain any reduction from a contractually set attorney's fee. See Allen v. United States, 606 F.2d 432, 436 (4th Cir.1979). In cases such as this "counsel is entitled ... to a ... deliberate articulation of rationale." Farmington v. Dowel Products Co. v. Forster Manufacturing Co., 436 F.2d 699, 701 (1st Cir.1970). Naturally, the inquiry and explanation should center on those judicially cognizable factors relevant to the specific case. We are satisfied that here the district court adequately explained and supported the reduction in terms of the relevant factors spelled out by the federal courts, the Illinois courts, and the American Bar Association's Code of Professional Responsibility.[13]
 
 The judgment is
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable Oscar H. Davis, Circuit Judge, United States Court of Appeals for the Federal Circuit, is sitting by designation
 
 
 [1]
 After, and possibly because of, the accident, Edward, Sr. became heavily in debt, emotionally disturbed, and dependent on alcohol. It seems too that he practically left the children to the care of some neighbors
 
 
 [2]
 No appeal was taken by the Soo Railroad
 
 
 [3]
 There is no issue before us relating to the fee of the guardian ad litem
 
 
 [4]
 In this opinion "appellant" and "counsel" both refer to the Maddux firm
 
 
 [5]
 Before us, Maddux is opposed by the special guardian and by the creditor-intervenors (who obviously hope to increase the portion of the total judgment reachable by them). The defendant Railroad, having no interest in the fee-dispute, has not participated
 
 
 [6]
 Compare Elder v. Metropolitan Freight Carriers, Inc., 543 F.2d 513, 517-18 (3d Cir.1976) (finding jurisdiction on what appear to be weaker facts)
 
 
 [7]
 The power to reduce the attorney's fees on the father's own share of the judgment is ancillary to the court's control over the children's share. Most of the judgment award beyond that to the children was to Norie's estate and the children had a direct interest in that portion. In addition, the father's interests might also be said to need protection. He was emotionally disturbed, under the influence of alcohol, and would probably take nothing from the judgment because of the prior rights of his creditors
 
 
 [8]
 Gaddy v. Louisville & Nashville R.R. Co., 292 F.Supp. 44 (E.D.Ky.1968), is irrelevant because the district court there was not construing Illinois law
 
 
 [9]
 They are as follows:
 "(a) the time and labor required;
 (b) the novelty and difficulty of the questions presented (both factual and legal);
 (c) the skill requisite to perform the legal services properly;
 (d) the preclusion of other employment by the attorney due to acceptance of the case;
 (e) the customary fee;
 (f) whether the fee is fixed or contingent;
 (g) time limitations imposed by the client or the circumstances;
 (h) the amount involved and the results obtained;
 (i) the expertise, reputation, and ability of the attorney;
 (j) the 'undesirability' of the case;
 (k) the nature and length of the professional relationship with the client; and,
 (l) the amount of awards in similar cases."
 Carter, 76 F.R.D. at 569. Accord, The Code of Professional Responsibility of the American Bar Association, Disciplinary Rule DR 2-106(B).
 
 
 [10]
 We agree that it is inappropriate to look to the terms of the aborted settlement offer to determine justifiable reasonable fees. But occurrences at the time of that attempted settlement may, nevertheless, provide useful information germane to the factors prescribed for deciding reasonableness of the fee
 
 
 [11]
 It seems that, in actual fact, the proposed settlement would have given the attorneys substantially more than the one-third portion fixed by the fee-contract
 
 
 [12]
 We do not agree with appellant's contention that this interpretation of the "contingency" factor makes that factor wholly redundant with the factor of "novelty and difficulty of the case." The latter relates to the requisite skill needed to handle the legal and factual issues in the case and the former relates primarily to the facts and how clearly they fit within a legally cognizable claim. Although attorney skill will, in turn, affect the odds of a successful outcome, the two are interrelated, and they are not meant to be wholly independent of each other
 
 
 [13]
 Appellant's vague and general charge that due process was denied is not sustainable. First, due process has been afforded. Counsel was fairly warned that an unreasonable fee would not be upheld and counsel had adequate opportunity to persuade the court of the reasonableness of the fee. Second, appellant was not deprived of property because an invalid fee-contract (to the extent it is invalid) creates no property rights