**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-30687

**REPUBLIC OF PANAMA**, Plaintiff,

v.

**THE AMERICAN TOBACCO COMPANY, INC. ET AL.**, Defendants,

**FORTUNE BRANDS, INC.**, formerly known as American Brands Inc.; **R.J. REYNOLDS TOBACCO COMPANY; BROWN & WILLIAMSON TOBACCO CORPORATION**, Individually and as successor by merger to The American Tobacco Company; **BATUS, INC.; BATUS HOLDINGS, INC.; PHILIP MORRIS INCORPORATED; PHILIP MORRIS COMPANIES, INC.; LORILLARD TOBACCO CO.; LIGGETT GROUP INC.; THE TOBACCO INSTITUTE, INC.; QUAGLINO TOBACCO AND CANDY COMPANY, INC.; J&R VENDING SERVICES, INC.**, Defendants.

---

**SAO PAULO STATE, of the Federative Republic of Brazil**,
Plaintiff-Appellee,

v.

**THE AMERICAN TOBACCO COMPANY, INC. ET AL.**, Defendants,

**FORTUNE BRANDS, INC.**, formerly known as American Brands Inc.; **R.J. REYNOLDS TOBACCO COMPANY; BROWN & WILLIAMSON TOBACCO CORPORATION**, Individually and as successor by merger to The American Tobacco Company; **BATUS, INC.; BATUS HOLDINGS, INC.; PHILIP MORRIS INCORPORATED; PHILIP MORRIS COMPANIES, INC.; LORILLARD TOBACCO CO.; LIGGETT GROUP INC.; THE TOBACCO INSTITUTE, INC.; QUAGLINO TOBACCO AND CANDY COMPANY, INC.; J&R VENDING SERVICES, INC.**, Defendants-Appellants.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

September 5, 2001

*ON PETITION FOR REHEARING EN BANC*

(Opinion May 14, 2001, 5th Cir., 2001, 250 F.3d 315)

Before EMILIO M. GARZA, STEWART and PARKER, Circuit Judges.

PER CURIAM:

Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. The Court having been polled at the request of one of the members of the court and a majority of the judges who are in regular active service not having voted in favor[1] (FED.R.APP.P and 5TH CIR.R. 35), the Petition for Rehearing En Banc is DENIED.

---

[1]Judge Barksdale and Judge Benavides did not participate in the consideration of the petition for rehearing en banc.

JACQUES L. WIENER and ROBERT M. PARKER, Circuit Judges, joined by CAROLYN DINEEN KING, PATRICK E. HIGGINBOTHAM, W. EUGENE DAVIS and JAMES L. DENNIS, Circuit Judges, dissenting from the Court's denial of the Petition for Rehearing En Banc:

The panel opinion for this case marks the first time in the history of American jurisprudence that an appellate court has reversed a trial judge's discretionary refusal to recuse himself —— and has ordered the judge recused —— based solely on the fact that many years earlier, while he was a practicing attorney, he had been linked (erroneously at that) with one view of a legal issue that was then pending in state court and only recently resurfaced in a case pending before him in federal court.[2] The Petition for Rehearing En Banc challenges the panel's holding that a federal district judge ("the Judge") abused his discretion by refusing to recuse himself pursuant to 28 U.S.C. § 455(a), simply because he had been mistakenly identified, years before he became a judge, as having an "association with the legal position" now being espoused by one of the parties in a case pending before him.

The Petition for Panel Rehearing challenged the panel's holding that under those circumstances the Judge abused his discretion by not recusing himself pursuant to 28 U.S.C. § 455(a). We respectfully but vigorously dissent from the refusal of a majority of the active judges of this court to rehear this matter en banc. We would have granted rehearing en banc, not merely because we view the panel opinion[3] as wrongly decided, but

_____

[2] *Republic of Panama I*, 217 F.3d at 347.

[3]The panel opinion in this matter, *Republic of Panama v. American Tobacco Co., Inc*., 250 F.3d 315 (5th Cir. 2001)("*Republic of Panama II*"), followed, as it had to, the earlier panel decision in a companion case, *Republic of Panama v. American Tobacco Co.,*

3

primarily because the nature of the error committed in pronouncing that result dangerously erodes the discretion that Congress has assigned to federal judges in matters of recusal while opening a new, broad avenue for litigants to avoid appearing before a judge they perceive to be unfairly disinclined to favor their side of a case.

### FACTS AND PROCEDURAL HISTORY

In October 1998, the Republic of Panama filed suit alleging that the defendant tobacco companies conspired to conceal the addictiveness and health risks of tobacco and seeking compensation for health costs for diseases caused by smoking. *Republic of Panama I*, 217 F.3d at 344. The defendant tobacco companies removed the case to federal court. *Id.* at 345. In 1999, the tobacco companies sought to recuse the Judge, who had been assigned to the case. *Id.* The Judge exercised the discretion vested in him by statute, explaining in detail why he was denying the motion to recuse himself and remanding the action to state court. *Id.* On appeal, a panel of this court held that the Judge had abused his discretion, reversed his order denying recusal, vacated his order remanding the case to state court, and remanded the action to the district court for reassignment to a different judge. *Republic of Panama II*, 250 F.3d at 316.

The motion to recuse was based solely on the fact that the Judge had been listed — erroneously — as the president of a

---

*Inc.*, 217 F.3d 343 (5th Cir. 2000)("*Republic of Panama I*"). Both of these cases involve identical facts and decisions regarding the recusal issue at both the trial and appellate level. We acknowledge that the panel in *Republic of Panama II* was constrained by precedent and was not free to correct what we view as the error of *Republic of Panama I*.

4

specialized bar association (the Louisiana Trial Lawyer's Association ("LTLA")) on that organization's motion seeking permission to file an amicus curiae brief in similar state court tobacco litigation some nine years earlier. The Judge's name did not appear on the amicus brief itself.

Almost a decade prior to his appointment to the federal trial bench, the Judge had served a one-year term as president of the LTLA, from approximately October 1989 - October 1990. In April 1991, some six months after his term as president had expired, LTLA filed the subject motion seeking permission to file an amicus brief in the appeal of a tobacco products liability case in the Supreme Court of Louisiana. Despite his being president no longer, the Judge's name was mistakenly listed as President of the LTLA on the "Motion for Leave to File Amicus Curiae Brief" which was filed simultaneously with the filing of the association's amicus brief. The Judge signed neither the motion nor the brief, either as counsel or as an officer of the putative amicus association. Listed among the counsel on this motion, however, was Michael St. Martin, who is also counsel for the plaintiff in the present action. The amicus brief itself was not signed by Mr. St. Martin (or by the Judge) but by another attorney; neither did the brief or the motion list the Judge as counsel.

Although they were not identical to the allegations in the present case, the LTLA's 1991 amicus brief did contain allegations similar to those in the current litigation, including, *inter alia*, that smoking is addictive and that it causes cancer, and that the defendant tobacco companies knew or should have known about the health dangers of smoking. The amicus brief argued that the tobacco companies should be held liable because they were negligent in producing their product.

In denying the tobacco defendants' recusal motion in the present case, the Judge specifically informed the parties that, even though his name had been listed on the motion seeking permission to file the amicus brief in state court years ago, it had been placed on the motion by mistake; his term as president of LTLA had ended months before by the time the brief was filed. The Judge further informed the parties that he had nothing to do with the research, writing, signing, or approval of the brief; and that neither as a practicing attorney nor in any other capacity had he ever participated in any tobacco litigation. And the Judge also explained that the decision to file an amicus brief and the determination of the contents of the brief were exclusively governed by the LTLA Amicus Committee, not the president or executive committee of the association.

## DISCUSSION

We review the denial of a motion to recuse for abuse of discretion. *Trevino v. Johnson*, 168 F.3d 173, 178 (5th Cir. 1999). A judge should recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "In order to determine whether a court's impartiality is reasonably in question, the objective inquiry is whether a well-informed, thoughtful and objective observer would question the court's impartiality." *Trust Co. v. N.N.P.*, 104 F.3d 1478, 1491 (5th Cir. 1997). The purpose of § 455(a) is to avoid even an appearance of partiality. *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995).

We are firmly convinced that no reasonable person, aware of all the facts, would question any judge's impartiality based on circumstances as attenuated as those presented by this case: (1)

6

The Judge's name was listed, erroneously and without his knowledge, on a motion to file an amicus curiae brief — not even the brief itself; (2) the motion and brief were filed on behalf of an association of which the future judge was a past president; (3) the motion was filed in a state court proceeding seven years before the Judge took the bench and eight years before the present lawsuit was filed; (4) the motion related to a legal issue in which the Judge had never been involved as a practicing attorney or otherwise; and (5) it was filed by lawyers for the association with whom the Judge has never been a partner or an associate.

On appeal, the tobacco companies urged a panel of this court to adopt the rule that any judge who had a "pre-judicial association with the position" — not with the parties, not with the lawyers, but with a "position" — can never fairly decide a case that raises questions pertaining to that "position." In buying into that proposition, the panel clearly called into question the oath we take when we become federal judges. If we should embark on such a perilous course, we will launch a cottage industry in which investigators will comb the contents of speeches made, articles written, and pleadings and briefs filed by a judge prior to his taking of that oath, looking for some trace of evidence suggesting that, prior to his judgeship, the judge held views on legal questions that can be used to disqualify him from hearing cases that implicate such matters. Nothing — not the statute, not our jurisprudence, not the public policy underlying the concept of recusal — supports the panel's decision to require the Judge's recusal under such attenuated circumstances.

*Republic of Panama I* correctly notes that this record includes no evidence of actual bias on the part of the Judge. *Republic of Panama I*, 217 F.3d at 347. It nevertheless concludes that nothing

7

more than the mere listing of the Judge's name on a motion to file an amicus brief that years earlier had asserted allegations against tobacco companies similar to those asserted by the plaintiffs in this case, could lead a reasonable person to doubt the Judge's impartiality. *Id.*

The panel's analysis of *Republic of Panama I* relies on but a single case, *Bradshaw v. McCotter*, 785 F.2d 1327 (5th Cir. 1986). In *Bradshaw*, a criminal defendant argued that a judge on the Texas Court of Criminal Appeals should have been disqualified because at the time of the defendant's conviction the future Judge's name was listed on a brief as State Prosecuting Attorney in the defendant's appeal. *Id.* at 1328. The judge in *Bradshaw* explained that in fact he had not participated in the prosecution of the case at all, and that his name had appeared on the brief simply as a matter of courtesy and protocol. We held that whether the judge actually participated in the prosecution was immaterial because the listing of his name on the brief undermined the appearance of impartiality. *Id.* at 1329.

Yet, when carefully read, the opinion in *Bradshaw* makes pellucid that it does not present a "somewhat similar fact situation" to that in *Republic of Panama I*. *Republic of Panama I*, 217 F.3d at 347. The recusal ordered in *Bradshaw* was directed at a judge who was not just <u>correctly</u> listed on the State's brief as prosecuting attorney (albeit he did not personally participate in the prosecution), but who was in fact scheduled to hear the appeal of the <u>very same</u> case of the <u>very same</u> criminal defendant. *Bradshaw* does not deal with a mere *amicus*; it is not a civil case; it does not involve a union, trade association, or bar association;

8

it correctly identified the judge as the prosecuting attorney; and it implicated a substantive pleading —— the appellate brief —— not, as here, a non-substantive, procedural motion.  Because *Bradshaw* neither presents nor answers the questions raised by the instant case, it affords no support for the panel's decision to require the Judge's recusal under the present circumstances.

Although *Bradshaw* offers no map out of the present situation, we are not here navigating uncharted waters.  In an earlier en banc decision, this court held that a district judge who, before ever becoming a judge, served as president of a racially segregated bar association, was not thereby disqualified from hearing plaintiffs' claims of racial discrimination in the administration of the Alabama State Bar examination.  *Parrish v. Bd. of Comm'rs of the Ala. State Bar*, 524 F.2d 98 (5th Cir. 1975).  Even though that future judge had actually taken steps to change the bar's segregation policy, he was faulted by those who sought his recusal for the failure of his effort to obtain membership for African-American lawyers during his term of leadership.  *Id.* at 101.  We held in *Parrish* that the allegation concerning the judge's "past activities in the Montgomery [Alabama] Bar Association [] is essentially an allegation based on the judge's background and states no specific facts that would suggest he would be anything but impartial in the deciding the case before him."  *Id.*

The facts in *Parrish* more closely parallel those presented in this case than do the facts in the *Bradshaw* decision relied on by the *Republic of Panama I* panel.  Even if the views expressed in the amicus brief ten years earlier had been firmly held by the Judge at the time that the brief was written (note that nothing other than

9

his membership in the amicus association and his prior presidency of it can be cited as evidence that in fact he held those views), this would not be grounds for forced recusal under the jurisprudence of this or any other circuit. More to the point, that is not the question presented by the record in this case, which does not indicate that the Judge ever expressed any anti-tobacco sentiments, either publicly or privately, much less that he ever participated in any tobacco litigation whatsoever, whether as a party or as counsel. His only "taint" was his connection to a bar association that advocated, solely as a friend of the court, a similar position on similar litigation in state court almost a decade earlier. Such an attenuated nexus is woefully insufficient to underpin this court's interference with the Judge's decision, which was well within his discretion.

Equally important in sorting out this issue is the position taken by the United States Supreme Court. In *Laird v. Tatum*, 409 U.S. 824 (1972)(Rehnquist, J., mem.) then-Associate Justice Rehnquist decided not to disqualify himself on the basis of public statements he had made prior to his appointment to the bench. As a Department of Justice lawyer, he had testified as an expert witness before the Senate Judiciary Committee's Subcommittee on Constitutional Rights regarding the statutory and constitutional law dealing with the authority of the executive branch to gather information. Notably, then-attorney Rehnquist's remarks included a reference to the very case involved (*Laird*), which then was pending in the D.C. Circuit. *Id*. at 825-27. The respondents contended that the Justice should disqualify himself because he had previously expressed a public view concerning what the law is or ought to be in the matters presented in the *Laird* litigation. *Id*.

at 824-25.  In declining to recuse, Justice Rehnquist stated:

> Proof that a Justice's mind at the time he joined the court was a complete tabula rasa in the area of constitutional adjudication would be evidence of lack of qualification, not lack of bias.  . . .
>
> The oath prescribed by 28 U.S.C. § 453 which is taken by each person upon becoming a member of the federal judiciary requires that he "administer justice without respect to persons, and do equal right to the poor and to the rich," that he "faithfully and impartially discharge and perform all the duties incumbent upon (him) . . . agreeably to the Constitution and laws of the United States."  Every litigant is entitled to have his case heard by a judge mindful of this oath.  But neither the oath, the disqualification statute, nor the practice of the former Justices of this Court guarantee a litigant that each judge will start off from dead center in his willingness or ability to reconcile the opposing arguments of counsel with his understanding of the Constitution and the law.  That being the case, it is not a ground for disqualification that a judge has prior to his nomination expressed his then understanding of the meaning of some particular provision of the Constitution.

*Id.*, 409 U.S. at 835; 838-39.

In addition to repudiating clear direction from both our own en banc court and the Supreme Court, the panel opinion disregards the unanimous voices of other U.S. Courts of Appeals that have addressed the issue.  For example, in *Schurz Communications v. FCC*, 982 F.2d 1057 (7th Cir. 1992), Judge Richard Posner denied a recusal motion that was based on an affidavit he had submitted as an expert witness fifteen years earlier in an antitrust case involving the identical question presented in the case in which his

11

disqualification was being sought.  Judge Posner reasoned that if 28 U.S.C. § 455(a) were interpreted to require recusal in such a situation,

> I would be eternally disqualified from participating in antitrust or regulatory cases, because when I was a law professor I acted frequently as a consultant and occasionally an as expert witness in regulatory and antitrust matters that presented the same types of issues, often in the same industry, as do cases that come before this court.  No decision supports such an interpretation.
>
> * * *
>
> The affidavit repeated views about antitrust policy that I had stated in many different fora over a period of years, and the movants do not and could not argue that a judge should disqualify himself because he has views on a case.

*Id.* at 1061-62.

Similarly, in a much more closely analogous case, *Cipollone v. Liggett*, 802 F.2d 658 (3rd Cir. 1986), the district judge had, while in private practice, represented a tobacco company in a case involving a products liability claim like the one currently pending before him as a judge.  The Third Circuit affirmed the district court's decision not to recuse himself, stating:

> [P]rior knowledge about legal issues is not a ground for recusal of a Judge.  . . .If Judges could be disqualified because their knowledge of legal issues which might be presented in cases coming before them, then only the least-informed and worst-prepared lawyers could be appointed to the bench.

12

*Id.* at 659-60. *See also United States v. Payne*, 944 F.2d 1458 (9th Cir. 1991)(rejecting the notion that generalized policy views, expertise on and exposure to a subject necessitates recusal); *United States v. Alabama*, 828 F.2d 1532 (11th Cir. 1987)(holding that district judge's background representing plaintiffs in civil rights actions does not warrant disqualification in a school desegregation case brought by United States against Alabama); *Rosquist v. Soo Line Railroad*, 692 F.2d 1107 (7th Cir. 1982)(affirming a denial of recusal and holding that a judge is not required to recuse himself merely because he holds and had expressed certain views on a subject.)

In the instant litigation, the defendant tobacco companies imply that the fact that, in the old state case, the name of one of today's opposing counsel was listed as counsel for the amicus association on the same pleading (motion for permission to file an amicus brief) as was the name of the Judge (erroneously) as president of the client association — thereby evidencing that they belonged to the same bar association — requires recusal. This argument is so lacking in merit that it needs no further comment. Another concern raised by the tobacco defendants is that the Judge "appeared" to have been involved in litigation against the same tobacco companies. This too is feckless, as we have long rejected this "identity of parties" argument. For example, in *Chitamacha Tribe of Louisiana v. Harry L. Laws Co., Inc.*, 690 F.2d 1157 (5th

13

Cir. 1982), the presiding judge had, during his law practice prior to assuming the bench some six years earlier, represented Texaco, currently a defendant in the case before him, on an unrelated matter. *Id.* at 1166. Other defendants in the case were related to partners in the judge's former law firm. *Id.* at 1167. We agreed with the Judge that his recusal was not required, declaring his connection with Texaco too remote and innocuous to warrant

disqualification. If direct representation of a party (not an amicus) six years earlier is too remote, surely mere membership in and past presidency of a bar association whose only nexus with the appeal then pending before the state supreme court was the filing of an amicus brief eight years earlier, relating to a common –– but non-represented –– party, cannot require reversal of the Judge's exercise of discretion not to recuse himself.

We can perceive no legitimate basis for disturbing the Judge's exercise of discretion in this case and would affirm his denial of the recusal motion. We are satisfied that this issue cuts across ideology, politics, and judicial philosophy, and that it has the potential for undermining the independence of the federal judiciary. No existing jurisprudence supports, much less requires, recusal of a judge who, years before taking the judicial oath, had expressed an opinion on an issue of law, or had represented the same or a related party, or had belonged to and held office in an

14

organization that advocated a particular view of public policy or legal interpretation. Never before has any court accepted "issue recusal" as a ground for reversing a judge who in his own exercise of discretion, concluded that his recusal was not required. The panel decision that this court has refused to rehear en banc sets an alarming precedent by doing precisely that, and trivializes our oath in the process. For these reasons we are constrained to dissent from the refusal of a majority of the judges of this court to vote to rehear this case en banc.