596 F.2d 129
 William Gary BROWN, Jr., A Minor, By and Through Thomas E.
Bryant, Jr., Guardian and Next Friend, Plaintiff,
v.
WATKINS MOTOR LINES, INC., et al., Defendants.
C. R. McRAE, Appellant,
v.
Mrs. Ruth MAY, Guardian Ad Litem, Appellee.
 No. 76-4477.
 United States Court of Appeals,
Fifth Circuit.
 June 4, 1979.
 
 Dixon L. Pyles, Jackson, Miss., for appellant.
 F. Kent Stribling, Jackson, Miss., for appellee.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before THORNBERRY, CLARK and RONEY, Circuit Judges.
 CHARLES CLARK, Circuit Judge:
 
 
 1
 This appeal questions the power of a federal trial court on its own motion to adopt as the court's ward a minor represented by a duly qualified guardian, fix the compensation of the guardian's attorney, and direct his payment out of a tort judgment previously rendered by the court. We hold that, absent the presentation of some dispute, no case or controversy exists which will support such a Sua sponte post-judgment assumption of power.
 
 
 2
 William Gary Brown, Jr., the four-year-old plaintiff, was severely injured in an automobile accident with a truck owned and operated by defendant Watkins Motor Lines, Inc., near Pascagoula, Mississippi. His parents retained an attorney, C. R. McRae, on a one-third contingent fee contract to represent Brown in a suit against Watkins. The Probate Court of Alabama, Brown's home state, appointed Thomas E. Bryant, Jr., to act as guardian of Brown's estate in Alabama. Bryant, through McRae as counsel, instituted a diversity action in the district court and won for Brown a $500,000 jury award. This award was embodied in a final judgment of the district court on September 17, 1976. Watkins moved for the entry of an order of remittitur, or correction, or in the alternative for a new trial. By order entered October 14, 1976, the court overruled this motion and Sua sponte directed the payment of the judgment proceeds into the registry of the court. The order further provided: "(T)his Court shall pass upon all claims against the guardianship estate and shall retain full jurisdiction of the administration and supervision of this estate until otherwise ordered by this Court." Watkins deposited the $500,000 plus interest with the district court in full payment and satisfaction of the judgment and did not participate further in the cause.
 
 
 3
 On November 18, 1976, Bryant moved the district court to disburse the registry funds to him in his guardianship capacity. The trial judge refused to order distribution of the judgment proceeds until an ancillary guardianship was set up in Mississippi as required by the law of that state. Miss.Code Ann. §§ 93-13-181 through 185 (1972). After that was done and a hearing had been held, the court, by order entered December 14, 1976, denied the relief requested. Instead, over the objections of both Bryant and McRae, it fixed McRae's attorney fees and expenses at $93,692.67, then ordered those funds paid to McRae and the balance paid into the Chancery Court of Hinds County, Mississippi, where the ancillary guardianship had been established. In the course of an oral opinion delivered at the conclusion of the hearing, the district court stated that it was "precluding" any question as to attorney's fees to the Chancery Court of Hinds County and was only ordering paid to that court the net amount of the judgment proceeds, ex attorney's fees. On December 30, 1976, the guardian withdrew a registry check for $411,753.68. On January 3, 1977, McRae withdrew a registry check for $93,692.67.
 
 
 4
 On this appeal, McRae contends that the district court lacked jurisdiction to fix the portion of the judgment which should be awarded as attorney's fees and expenses. Alternatively McRae argues that it was an abuse of discretion to ignore his one-third contingent fee contract and grant a totally inadequate allowance of 15 percent of the judgment. Because we find that the district court had no jurisdiction to allocate the final judgment, we can not address the issue of adequacy.
 
 
 5
 It cannot seriously be doubted that prior to distributing a judgment award a court has the power to decide a contest between the judgment creditor and his attorney over the appropriate amount of the attorney's fee lien on the judgment. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); United States v. Equitable Trust Co., 283 U.S. 738, 51 S.Ct. 639, 75 L.Ed. 1379 (1931); Garrett v. McRee, 201 F.2d 250 (10th Cir. 1953).[1] However, in the present action there was no request for such relief. The parents of the injured minor had entered into a contingent fee contract with McRae before litigation commenced. Neither the Browns nor Bryant has expressed dissatisfaction with that contract, nor has its validity been questioned. According to comment of counsel, the contract has been approved by the original guardianship court in Alabama.
 
 
 6
 Today's appeal grew out of the district court's apparent doubt that Bryant or the state guardianship courts would protect the interests of the four-year-old Brown. In a companion case earlier instituted by Bryant in the name of William Brown's brother for injuries from the same accident, McRae had received $266,666.66 in attorney's fees on a one-third contingent fee contract similar to the one asserted here. Obviously troubled by the aggregate fees McRae was taking from the children's estate, the district judge commented:
 
 
 7
 Well, let's just make this perfectly clear, that in a case where a guardian is appointed, and of course this is an unusual case because this little boy had two living parents. . . . (B)ut you came over here and got a statutory guardian from Mobile County, complete stranger to this child. He couldn't possibly have any interest or knowledge in that little boy, and to have that complete rank stranger appointed as his guardian and have him decide with you about what your attorney's fee is going to be, I would say he would have a stacked jury to start off with, and I'm not even about to do that. Matter of fact, I want to hear from you how much money you took out of this $800,000 verdict, Mr. Counsel. You want to tell me about that?
 
 
 8
 Assuming someone may wish to raise a controversy over McRae's fees, our resolution of the present appeal would not affect its presentation at a later time to a court having jurisdiction. However, no adverse claims to the judgment funds have been asserted in the district court. When Bryant petitioned the court to transfer the entire judgment to the Hinds County Chancery Court, the district court adopted the position that Brown was "the ward of this court to the extent of the fixation of attorney's fees," and of its own motion proceeded to allocate the judgment. This it could not do. The absence of a live controversy before the district court mandates that we vacate for lack of jurisdiction its decision to apportion the award.
 
 
 9
 Article III of the United States Constitution limits the power of federal courts to deciding only those questions arising in a "case" or "controversy." Those terms are not amenable to precise definitions or easy application. See Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The judicial power conferred by the Constitution has been defined as " 'the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties Who bring a case before it for decision.' " Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911) (emphasis added), quoting, Miller, Const. 314. If no party before a court makes or suggests any contest, but rather all litigants desire precisely the same result, there can be no case or controversy within the meaning of Article III. Moore v. Charlotte-Mecklenburg Board of Education, 402 U.S. 47, 91 S.Ct. 1292, 28 L.Ed.2d 590 (1971).
 
 
 10
 Although the district court's attempt to protect what it considered to be the best interests of the minor is laudable, it had no authority to force upon the parties a remedy that they did not seek. The case or controversy in the federal forum ended with payment of the judgment into the registry of the court. The unopposed petition to transfer the judgment intact to the Hinds County Chancery Court was a ministerial request which should have been granted. The court's refusal to do so, followed by a Sua sponte invocation of its equity power in an effort to protect the minor as its ward, was the assumption of a jurisdiction it lacked.
 
 
 11
 By asserting that it was precluding the state court from exercising its authority to distribute Brown's estate, the district court's order has effectively stayed the Hinds County Chancery Court's actions in administering the guardianship to the detriment of the litigants there. In the interests of justice, that portion of the district court's order adjudicating the amount to be paid C. R. McRae as attorney's fees and expenses is found to be beyond the district court's jurisdiction and is vacated. 28 U.S.C.A. § 2106. Since vacating the extra-jurisdictional allocation eliminates the conflict between the district court and the state guardianship courts, and since we are advised that McRae has transferred the funds paid to him over to the Hinds County Chancery Court, we dismiss this appeal.
 
 
 12
 ORDER VACATED IN PART and APPEAL DISMISSED.
 
 THORNBERRY, Circuit Judge, Dissenting:
 
 13
 As I read the Movant-Appellant's brief, Mr. McRae argues that the federal district court was without power to award attorney's fees because in Mississippi, law and equity are separate and this suit is a law action. And by so separating law and equity, the State of Mississippi has ousted the federal court of what would otherwise be within its equity jurisdiction. I believe that the Supreme Court disposed of this argument in 1887. I have included in the margin language from McConihay v. Wright, 121 U.S. 201, 206, 7 S.Ct. 940, 30 L.Ed. 932 (1887), that holds that a state may not oust the equity powers of a federal court.[1]
 
 
 14
 The majority has not accepted the appellant's argument but has instead sua sponte determined that no case or controversy exists. Because I find this case indistinguishable from Cappel v. Adams, 434 F.2d 1278 (5 Cir. 1970), I must respectfully dissent.
 
 
 15
 In Cappel v. Adams, supra, attorney Splawn represented Cappel and his family against the owners of an El Paso motel. Cappel had entered into a 1/3 contingent fee contract with Splawn for the amount of the recovery. The motel admitted liability and paid $100,000 into the registry of the court. Splawn moved for the amount of his attorney's fees ($33,333.33), but the district court refused to award a full 1/3 recovery against the award given to the minor plaintiffs. In affirming the district court we quoted from Garrett v. McRee, 201 F.2d 250, 253 (10 Cir. 1953):
 
 
 16
 where an attorney recovers a fund in a suit under a contract with a client providing that he shall be compensated only out of the fund he creates, the court having jurisdiction of the subject matter of the suit has power to fix the attorney's compensation and direct its payment out of the fund.
 
 
 17
 Cappel v. Adams, 434 F.2d 1278, 1279 (5 Cir. 1970).
 
 
 18
 The majority distinguishes Cappel because in the present case "no party petitioned the district court to fix such fees." While this is undoubtedly true, I think the distinction misses the mark. There is not the slightest bit of evidence that any party in Cappel objected to the award of the full attorney's fees. If there was a case in controversy in Cappel, I cannot see how there is not one in the present case. I think Cappel must be deemed controlling unless we are prepared to hold that the Cappel court overlooked the absence of a case or controversy.[2]
 
 
 19
 I respectfully suggest that there is a case or controversy present and the district court does have jurisdiction in this suit. The plaintiff's action is against Watkins Motor Lines. Watkins defended this suit but eventually paid into the registry of the court over one-half million dollars. Here we have a case or controversy. The distribution of the attorney's fees is ancillary to this case or controversy. There is no requirement that each discreet step of the lawsuit must be adversary. It is enough that the case in chief be a case or controversy. Once the federal court has the res in its power it may distribute the proceeds "between solicitor and client."[3]
 
 
 20
 I think the attorneys of this circuit will be surprised to know that if they ask the federal court to award attorney's fees they run the risk of equitable distribution, Cappel, but if they petition the court to transfer the entire award to a state guardian they run no such risk.
 
 
 
 [1]
 Cappel v. Adams, 434 F.2d 1278 (5th Cir. 1970), is distinguishable. There, as in Garrett v. McRee, supra, the court having judgment proceeds in its coffers was petitioned to fix attorney's fees. In Cappel, we held that the court had the power to award an amount different from the terms of a contract. In the case at bar, however, no party petitioned the district court to fix such fees
 
 
 [1]
 The contention of the appellants, however, is that by the statute of West Virginia the complainant might have maintained an action of ejectment. Reference is made, in support of this contention, to the West Virginia Code of 1868, c. 90, to show that an action of ejectment in that state will lie against one claiming title to or interest in land, although not in possession. Admitting this to be so, it nevertheless cannot have the effect to oust the jurisdiction in equity of the courts of the United States as previously established. That jurisdiction, as has often been decided, is vested, as a part of the judicial power of the United States, in its courts by the constitution and acts of congress in execution thereof. Without the assent of congress, that jurisdiction cannot be impaired or diminished by the statutes of the several states regulating the practice of their own courts. Bills Quia timet, such as the present, belong to the ancient jurisdiction in equity, and no change in state legislation giving, in like cases, a remedy by action at law, can of itself curtail the jurisdiction in equity of the courts of the United States
 McConihay v. Wright, 121 U.S. 201, 206, 7 S.Ct. 940, 942, 30 L.Ed. 932.
 
 
 [2]
 McRae distinguishes Cappel because it is a Texas case and in Texas law and equity are not separate entities. I have included in footnote 1, Supra, why this distinction is of no moment
 
 
 [3]
 I need not comment if the district court abused its discretion in making the award