656 F.2d 161
 Thomas M. HOFFERT, Individually and as next friend of John
Thomas Hoffert, A Defendant Minor, Plaintiffs,
v.
GENERAL MOTORS CORPORATION, Defendant.
COCHRANE & BRESNAHAN, P.A., Appellants,
v.
Russell B. SMITH, Guardian Ad Litem, Appellee.
 No. 81-1002
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Unit A
 Sept. 14, 1981.
Rehearing and rehearing En Banc Denied Oct. 13, 1981.
 Cochrane & Bresnahan, P.A., pro se., John A. Cochrane, St. Paul, Minn., for appellants.
 Russell B. Smith, Dallas, Tex., Court-appointed, for appellee.
 Appeal from the United States District Court for the Northern District of Texas.
 Before CHARLES CLARK, RUBIN and SAM D. JOHNSON, Circuit Judges.
 CHARLES CLARK, Circuit Judge.
 
 
 1
 The controversy in this case is over contingent attorneys' fees recoverable from the proceeds of a settlement and judgment in favor of Colonel Thomas M. Hoffert and his minor son, John Thomas Hoffert. Cochrane & Bresnahan, P.A., the law firm representing the plaintiffs, appeals from an order of the district court reducing the firm's fees from one-third to one-fifth for its services in representing the plaintiffs. We affirm.
 
 
 2
 On August 15, 1978, the fourteen-year-old John Hoffert was severely injured when the 1973 Vega in which he was a passenger collided with a 1962 Buick at an intersection in El Paso, Texas. The Hofferts alleged that the Vega was not crashworthy because defectively designed and manufactured and that John sustained his injuries because the impact with the Buick dislocated the hood and drove it through the windshield into his head and body. As a result of the accident, John received serious and extensive injuries to his face, head, chest, and legs. Although the record suggests he has made remarkable progress in his recovery, John Hoffert is permanently blind in both eyes.
 
 
 3
 On November 2, 1978, Colonel Thomas M. Hoffert and JoAnne L. Hoffert, acting as parents and natural guardians of their injured son, executed a contract employing Cochrane & Bresnahan, P.A., to represent Colonel Hoffert and John in litigation arising out of the automobile collision. The retainer agreement provided that the law firm would receive 40% of any monies recovered for the Hofferts whether by settlement or by verdict.
 
 
 4
 Cochrane and Bresnahan originally filed suit in the District Court of Dallas County, Texas, against General Motors Corporation, the manufacturer of the Vega in which John Hoffert was injured. This proceeding was nonsuited and the action was refiled on behalf of Colonel Hoffert, individually and as next friend of his injured minor son, in the United States District Court for the Northern District of Texas. About two months later, the parties agreed to settle the lawsuit and presented the settlement agreement for approval of the district court. Under that agreement, General Motors paid $2,500,000 into an interest-bearing escrow account in the First National Bank of Dallas, Texas, pending court approval of the settlement terms.
 
 
 5
 The district court found that the question of how to apportion the settlement proceeds between the father and the son created a potential conflict of interest. Accordingly, it appointed a guardian ad litem, Russell B. Smith, to protect the interests of the Hofferts' son. Smith then spent about sixty-one hours evaluating the settlement terms, examining medical records and witness statements, conducting personal interviews, and investigating the risk of continued litigation. In the course of reviewing the terms of the settlement agreement, Smith advised Cochrane & Bresnahan that the district judge was concerned about the 40% contingency fee. The firm thereby agreed to reduce its fee to 33 1/3% of the recovery in order to obtain the district court's approval of the settlement agreement. On the basis of that reduction and of his independent review of the settlement terms, Smith prepared his report to the district court recommending approval of the settlement agreement.
 
 
 6
 Following a hearing, the district court approved the settlement agreement and entered judgment for the plaintiffs. However, the court disapproved Cochrane & Bresnahan's recovery of one-third of the Hofferts' award and limited the firm's share of the recovery to $500,000. The court then awarded $41,865.00 to Colonel Hoffert as reimbursement for extraordinary expenses incurred as a result of his son's injuries. In addition to the $500,000 attorney's fees recovery, the court awarded $27,988.70 to Cochrane & Bresnahan for reimbursement of expenses incurred in connection with the lawsuit. The court then directed the First National Bank to pay the entire remainder of the escrow account, including all interest accrued, to the trustees of a trust created for the benefit of John Thomas Hoffert. Contending that it is contractually entitled to 33 1/3% of the total recovery ($833,333.00), Cochrane & Bresnahan appeals from the order of the district court distributing the settlement proceeds.
 
 
 7
 The primary thrust of Cochrane & Bresnahan's argument is that the district court lacked jurisdiction to modify the amount of attorney's fees recoverable under the contingency fee agreement because it was not presented with a "case" or "controversy" within the meaning of Article III of the United States Constitution. For this proposition, Cochrane & Bresnahan relies upon Brown v. Watkins Motor Lines, Inc., 596 F.2d 129 (5th Cir. 1979). In Brown, the minor plaintiff was injured in an automobile accident, and his parents retained a lawyer on a one-third contingent fee contract to represent him in a suit against the owner and operator of the truck which struck him. The Probate Court of Alabama, the plaintiff's home state, appointed a guardian over the plaintiff's estate. The guardian, acting through the attorney retained by the minor's parents, brought a diversity action in the district court and obtained a $500,000 jury verdict for the minor plaintiff. This award was embodied in a final judgment of the district court and was paid into the registry of the court upon its direction. When the guardian moved the district court to disburse the registry funds to him in his capacity as the plaintiff's guardian, the district judge refused to order distribution of the proceeds until an ancillary guardianship was established in Mississippi, the forum state. After that was accomplished, the district court, over the objections of both the plaintiff's guardian and attorney, again refused to disburse the judgment proceeds to the minor's guardian and fixed the attorney's fees and expenses at $93,692.67, ordering the balance of the proceeds to be paid into the Chancery Court of Hinds County, Mississippi, where the ancillary guardianship had been set up.
 
 
 8
 Presented with these facts, we held that the absence of a live controversy before the district court deprived it of jurisdiction to apportion the jury award. We recognized that in ordinary circumstances a court has power to resolve a dispute between a judgment creditor and his attorney concerning the amount of the attorney's fee lien on the judgment. 596 F.2d at 131. However, we emphasized that the contingent fee contract had already been approved by the original guardianship court in Alabama and that neither the injured minor's parents nor his court-appointed guardian raised any objection to the amount of the fee. We therefore concluded that the district court after final judgment was without power to impose upon the parties a remedy they did not seek.
 
 
 9
 The judicial power conferred by the Constitution has been defined as " 'the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision.' " If no party before a court makes or suggests any contest, but rather all litigants desire precisely the same result, there can be no case or controversy within the meaning of Article III.
 
 
 10
 596 F.2d at 131-32 (citations omitted).
 
 
 11
 Cochrane & Bresnahan maintains that this case is controlled by Brown because neither Colonel Hoffert, as the minor's next friend, nor Smith, as guardian ad litem, ever expressed any dissatisfaction with the size of the 33 1/3% contingent fee, and it emphasizes that Smith actually recommended approval of the settlement agreement in light of that amount. Nevertheless, though the facts presented in this appeal bear some superficial similarity to those involved in Brown, two significant distinctions set them outside the ambit of the principle applied there.
 
 
 12
 In Brown, the minor plaintiff was represented by a guardian appointed by the appropriate state court. Although the district court characterized the minor as a ward of the court, authority to allocate the judgment proceeds resided either with the Mississippi Chancery Court or with the Alabama Probate Court. Thus, the district court arrogated to itself responsibility for distributing the judgment proceeds which in fact belonged to the state court that created the guardianship. By contrast, the district court in the instant case, in which no judicially controlled guardianship existed, determined that a possible conflict of interest existed between Colonel Hoffert and his son and appointed a guardian ad litem to assure that the minor's interests were adequately represented.
 
 
 13
 Rule 17(c) of the Federal Rules of Civil Procedure provides, inter alia, "The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." Fed.R.Civ.P. 17(c). Cochrane & Bresnahan correctly points out that the court's power to appoint a guardian ad litem for a minor under Rule 17(c) is confined to those cases where the minor or incompetent is "not otherwise represented" in the action. See, e. g., Croce v. Bromley Corp., 623 F.2d 1084, 1093 (5th Cir. 1980). But the courts have consistently recognized that they have inherent power to appoint a guardian ad litem when it appears that the minor's general representative has interests which may conflict with those of the person he is supposed to represent. See, e. g., M.S. v. Wermers, 557 F.2d 170, 175 (8th Cir. 1977); Horacek v. Exon, 357 F.Supp. 71, 74 (D.Neb.1973). See generally C. Wright & A. Miller, Federal Practice and Procedure § 1570 at 774-76 (1975). Cf. Zaro v. Strauss, 167 F.2d 218, 220 (5th Cir. 1948). Cochrane & Bresnahan does not contest the district court's appointment of Smith to serve as guardian ad litem for the Hofferts' son, and there is nothing in the record to suggest that the court abused its discretion in making the appointment. That no party questioned the propriety of the 33 1/3% contingent fee and that the injured plaintiff's guardian ad litem acquiesced in its reasonableness did not shield the fee from the court's scrutiny as a part of the overall settlement which the court had before it. Having properly appointed a guardian ad litem to represent the injured minor's interest in this litigation, the district court was thereby vested with broad authority to inquire into the whole range of issues bearing upon the plaintiff's recovery in order to guarantee that the settlement agreement was in accord with his interests. See Dacanay v. Mendoza, 573 F.2d 1075, 1079 (9th Cir. 1978).
 
 
 14
 More importantly, the procedural posture of this case also sets it apart from Brown. Brown involved a jury award embodied in a final judgment and paid into the registry of the court; the only task remaining for the district court to perform was disbursement of the judgment proceeds to the court administering the minor's guardianship. Thus, we reasoned,
 
 
 15
 The case or controversy in the federal forum ended with payment of the judgment into the registry of the court. The unopposed petition to transfer the judgment intact to the Hinds County Chancery Court was a ministerial request which should have been granted. The court's refusal to do so, followed by a sua sponte invocation of its equity power in an effort to protect the minor as its ward, was the assumption of a jurisdiction it lacked.
 
 
 16
 596 F.2d at 132. Here, however, Cochrane & Bresnahan itself invoked the equitable jurisdiction of the district court by asking it to approve the terms of the settlement agreement, to decree the proper allocation of the settlement proceeds, and to order their distribution to the appropriate parties. Unlike Brown, it was plaintiffs' counsel, not the district court itself, that appealed to the judicial powers of equity. Judicial ratification of the parties' compromise of the lawsuit was not a purely ministerial act but a responsibility at the very core of the judicial function. Therefore, when Cochrane & Bresnahan presented the settlement agreement for the court's approval, the district judge was necessarily confronted with passing upon the propriety of the contingency fee arrangement. To determine whether the settlement was just, fair, and reasonable, the district court was required to examine, among other things, the net recovery to the plaintiffs. Apart from the total settlement amount, the 33 1/3% attorneys' fee award was the single most important factor bearing on the amount of that recovery. Accordingly, determining the reasonableness of that fee was essential to the district court's disposition of the case presented to it for decision.
 
 
 17
 This procedural difference helps to explain the rationale of Brown. Article III limits the federal judicial power in terms of the power to decide certain classes of "cases" or "controversies," and the cornerstone of this constitutional limitation is that a federal court should decide only those questions necessary for adjudication of the case before it. See, e. g., Rescue Army v. Municipal Court, 331 U.S. 549, 568-70, 67 S.Ct. 1409, 1419-20, 91 L.Ed. 1666, 1677, 1679 (1947); Tennessee Publishing Co. v. American National Bank, 299 U.S. 18, 22, 57 S.Ct. 85, 87, 81 L.Ed. 13, 15 (1936). Brown distinguished Cappel v. Adams, 434 F.2d 1278 (5th Cir. 1970), because no party to the action petitioned the district court to modify the contractual fee arrangement: where both litigants desire the same result, there can be no case or controversy within the meaning of Article III. Brown v. Watkins Motor Lines, 596 F.2d at 131 n.1. See Moore v. Charlotte-Mecklenburg Board of Education, 402 U.S. 47, 91 S.Ct. 1292, 28 L.Ed.2d 590 (1971). But where, as here and in Cappel, the plaintiff's attorney himself invokes the court's equitable power to approve a settlement agreement to distribute the proceeds, the court must scrutinize the reasonableness of the contingent attorneys' fee contract which affects the net recovery to the plaintiff. See Cappel v. Adams, 434 F.2d at 1280-81. Accordingly, we conclude that the district court had jurisdiction to limit the amount of Cochrane & Bresnahan's attorneys' fee recovery from the settlement proceeds in favor of the Hofferts.
 
 
 18
 We also reject the argument advanced by Cochrane & Bresnahan that the district court improperly reduced the amount of its fee below that provided in the contingent fee contract. The Code of Professional Responsibility of the American Bar Association imposes stringent limitations upon the ability of lawyers to contract for contingent fees. See DR2-106 and EC2-20. The drafters' explanatory footnotes indicate that these Code provisions are based largely upon Canon 13 of the old ABA Canons of Professional Ethics. Canon 13 provided,
 
 
 19
 Contingent Fees.
 
 
 20
 A contract for a contingent fee, where sanctioned by law, should be reasonable under all the circumstances of the case, including the risk and uncertainty of the compensation, but should always be subject to the supervision of a court, as to its reasonableness.
 
 
 21
 (Emphasis supplied.) See generally Allen v. United States, 606 F.2d 432, 435-36 (4th Cir. 1979); Dunn v. H.K. Porter Co., 602 F.2d 1105, 1108 (3d Cir. 1979); Cappel v. Adams, 434 F.2d at 1280. Moreover, the district judge has broad equity power to supervise the collection of attorneys' fees under such fee arrangements. As stated in Cappel v. Adams, "The sum determined to be a reasonable attorney's fee is within the discretion of the district court; before a reviewing court should disturb the holding there should be a clear showing that the trial judge abused his discretion." 434 F.2d at 1280 (citations omitted).
 
 
 22
 A district court abuses its discretion when it allows a fee without carefully considering the factors set forth in DR2-106(B) of the ABA Code of Professional Responsibility and elaborated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). In the circumstances of this case, we cannot conclude that the district court acted outside its discretionary power when it restricted Cochrane & Bresnahan's fee recovery to $500,000. In reaching its determination, the district court considered each of the factors bearing on the amount of reasonable attorney compensation and made factual findings sufficiently detailed to permit appellate review. These factual findings are fully supported by the record. Accordingly, the district court properly acted within its discretion to supervise the reasonableness of a contingency fee contract for legal services rendered on behalf of the injured minor.
 
 
 23
 AFFIRMED.