# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-50541

Cons. w/ 14-50200

MARIO NARANJO,

Plaintiff – Appellant,

v.

BOBBY THOMPSON; GEO GROUP, INCORPORATED; GEORGE ZOLY;
CLARENCE ANTONY; RICHARD CLANTON; ANNE NEWMAN;
CHRISTOPHER WHEELER; NORMEN CARLSON,

Defendants – Appellees.

Appeals from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and CLEMENT and ELROD, Circuit Judges.
JENNIFER WALKER ELROD, Circuit Judge:

Mario Naranjo, proceeding *in forma pauperis* under 28 U.S.C. § 1915, appeals the district court's denial of his motion for appointment of counsel to help litigate his civil rights claims against the management company of the prison where he was incarcerated. Despite finding that Naranjo "ha[d] demonstrated the exceptional circumstances to warrant the appointment of counsel," the district court denied the motion because it had no funding with which to compensate an appointed attorney, and it could find "no attorneys in

United States Court of Appeals
Fifth Circuit
**FILED**
November 13, 2015
Lyle W. Cayce
Clerk

No. 13-50541

the area willing or able to take the case *pro bono*." While Naranjo's appeal of that ruling was pending before this court, proceedings continued below, and the district court entered summary judgment against Naranjo, which he now also appeals. Because federal courts have inherent power to order counsel to accept an uncompensated appointment under the limited factual circumstances here, we VACATE the district court's orders denying appointment of counsel and entering summary judgment and REMAND for consideration of whether a compulsory appointment is warranted.

## I.

While incarcerated at the Reeves County Detention Center (Reeves III) in Pecos, Texas,[1] Naranjo sued the company managing the prison, GEO Group, Inc., and several of its directors and employees, for multiple violations of his constitutional rights. Naranjo was sentenced to serve his term of imprisonment in the custody of the Federal Bureau of Prisons (BOP), and was transferred in 2009 to Reeves III, a facility owned by Reeves County and managed by GEO Group. Naranjo alleged that prison officials: (1) violated his procedural due process rights by responding with deliberate indifference toward grievances that he filed; (2) violated his right to be free from cruel and unusual punishment by maintaining Reeves III at 166% of its capacity after several day rooms were converted into dormitories; (3) maintained Reeves III without proper regard for fire safety; (4) failed to maintain sanitary toilets in the outdoor recreation area, forcing inmates to make a daily choice between exercise and hygienic bathroom facilities and to endure unsanitary conditions

---

[1] The Federal Bureau of Prisons Inmate Locator indicates that Naranjo's term of imprisonment has ended. Because the district court's finding of exceptional circumstances was based, in part, upon Naranjo's inability to access discovery materials due to security concerns of a prisoner accessing such documents, exceptional circumstances may no longer exist. The district court is free to take account of any changed circumstances on remand.

2

throughout the prison; (5) provided insufficient medical care to service the increased population at Reeves III; (6) forced him to perform labor on behalf of GEO Group; and (7) denied him equal protection of the law by transferring him to Reeves III because he is Hispanic.  Naranjo brought his claims under 42 U.S.C. § 1983, seeking both damages and injunctive relief.  After evaluating the complaint and determining "that summary dismissal [wa]s not appropriate" under 28 U.S.C. § 1915A, the district court referred the case to a magistrate judge.

Before either party had requested discovery, defendants moved for summary judgment.  Naranjo failed to respond within the eleven-day period dictated by local court rules, and the magistrate judge ordered him to respond within the following two weeks or risk the summary judgment motion being treated as unopposed.  Naranjo mailed a response eight days later, but it was not received by the clerk and filed until a month after the magistrate judge's order.  On the day the response was filed, and presumably without having seen it, the magistrate judge issued an order noting that, despite the magistrate judge's earlier warning, Naranjo "ha[d] still not responded" to defendants' motion for summary judgment.  Naranjo re-sent his opposition to summary judgment, explaining the wire-crossing and displaying considerable frustration.  For the first time, Naranjo moved for appointment of counsel under 28 U.S.C. § 1915(e)(1).  The magistrate judge denied the motion because "the case is still in the pretrial phase," "the present cause of action is not complex, and Plaintiff will be able to adequately present his case."

While defendants' motion for summary judgment was pending, Naranjo filed several interrogatories and requests for documents.  Among his discovery requests, Naranjo asked that defendants produce schematics reflecting the original design of Reeves III, the names of corrections officers assigned to the Reeves III recreation yard between April 2009 and January 2010, and

schematics or other documents reflecting the conversion of Reeves III day rooms into dormitories. In their objections to all three discovery requests, defendants cited prison security concerns. Acknowledging those concerns, the magistrate judge ordered that all three items be filed under seal, and defendants complied.

Naranjo moved under Rule 56(d) to delay summary judgment pending additional discovery. The magistrate judge recommended granting summary judgment on all of Naranjo's claims and subsequently denied the Rule 56(d) motion. After Naranjo submitted objections to the magistrate judge's report and recommendations, the district court adopted the recommendations in part but denied summary judgment as to three of Naranjo's claims. For each of the three surviving claims—Naranjo's Eighth Amendment overcrowding, fire safety, and sanitation claims—the district court determined that conflicting or under-developed evidence precluded summary judgment. The magistrate judge then issued an order addressing Naranjo's outstanding discovery requests and scheduling an evidentiary hearing.

A week before the evidentiary hearing, Naranjo moved a second time for the appointment of counsel. Referencing the upcoming hearing, Naranjo indicated that he "cannot participate because to do so properly would require more legal skills than the Plaintiff has or can develope [sic]." He professed to being "unqualified to either present or cross-examine those witnesses" necessary to the presentation of his claims. Naranjo also noted that the case "involves credibility issues and conflicting testimony." A week after the evidentiary hearing, the magistrate judge ordered Naranjo to indicate what efforts he had already made to secure counsel on his own behalf. Naranjo responded that, as a native of Florida, he was not familiar with legal organizations in Texas, but he had contacted the American Civil Liberties Union office in Austin to ask for a referral and had not received any response.

4

At the evidentiary hearing, Naranjo did not introduce any evidence. After being repeatedly asked by the magistrate judge whether he had any evidence to submit on the fire-safety claim, Naranjo explained:

> Your Honor, with all due respect, I'm going to be standing by my declaration, the sworn pleadings that I've also put in throughout the hearing – proceedings, and that's as far as I'm going to – I have no other evidence.  I have been denied access to any reports, I do not – I'm not a trained attorney, I do not know how to conduct an evidentiary hearing, so I have to stand by my sworn declaration and my verified pleadings.

Naranjo responded similarly when asked whether he had evidence to submit on the overcrowding claim and the sanitation claim.  When asked whether he wanted to cross-examine the only witness at the hearing, former Reeves III Warden Bobby Thompson (the named defendant), Naranjo replied: "Your Honor, I have no questions for Warden Thompson.  I'm certainly not an attorney; I wouldn't know where to begin."  When asked whether he had any objections to the defendants introducing as exhibits the Fire Emergency Plans that GEO Group had submitted to the BOP, Naranjo responded: "Your Honor, I – I don't have a clue as to what they mean, to be honest with you."

Naranjo twice complained that the denial of his discovery requests impeded his ability to present evidence and participate meaningfully in the hearing.  He also noted several times that, without counsel, he could not access the documents that defendants had filed under seal.  Each time, the magistrate judge replied that "these documents will be kept under seal at this time, and they may be reviewed by an attorney or expert, should this case go to a jury trial."  After the magistrate judge had run through all of the outstanding discovery issues and asked Naranjo if he had any others, Naranjo responded: "I certainly don't at this point.  As I mentioned before, I wish I could be more forthcoming, but I'm certainly not a professional in the law.  And, you know, these discovery issues are just very confusing to me."

No. 13-50541

Nearly five months after the evidentiary hearing, the district court ruled on Naranjo's second motion for appointment of counsel. The district court found that "the circumstances surrounding the current stage of his lawsuit justify representation" and that Naranjo had "demonstrated the exceptional circumstances to warrant the appointment of counsel." The court focused on several "limitations" impeding Naranjo's ability to litigate his case uncounseled. In particular, the court weighed the fact that, in light of his status as an inmate, Naranjo was barred from viewing and responding to discovery that defendants had filed under seal due to security concerns. The district court also weighed the fact that presenting Naranjo's claims would likely involve conflicting testimony. All told, "the Court agree[d] that the appointment of counsel w[ould] expedite the lawsuit, promote judicial economy, and [wa]s ultimately justified under the circumstances."

Despite these findings, the district court denied the motion, lamenting that an appointment was impossible "[g]iven the remote location of Pecos, Texas and its dearth of legal representation." The district court reported having reached out to all seven licensed attorneys practicing in Pecos, all three attorneys admitted in the Western District and practicing in Reeves County (a fourth is now a local county judge), and legal aid organizations including the Texas Civil Rights Project. According to the district court, "none of the attorneys [it] contacted . . . were able to accept Plaintiff's case *pro bono*." The court could not offer compensation because "there is no special fund for appointment of counsel, the Court's discretionary budget is limited," and "no funding exists for the appointment of counsel in civil *in forma pauperis* cases filed under § 1983" in the Western District.

The district court considered ordering an unwilling attorney to take the case, but understood that option to be foreclosed, citing the Supreme Court's decision in *Mallard v. U.S. District Court for the Southern District of Iowa*, 490

6

No. 13-50541

U.S. 296 (1989), for the proposition that "courts are not empowered by [28 U.S.C. § 1915(e)(1)] to make compulsory appointments in § 1983 actions." The district court "urged [Naranjo] to immediately appeal this Order so the Fifth Circuit can provide guidance on the appointment of counsel" in such circumstances. Naranjo did so.

Shortly after Naranjo appealed the denial of his motion for appointment of counsel, defendants filed a second motion for summary judgment. They argued that Naranjo could not succeed on his § 1983 claims because "Naranjo's confinement [wa]s plainly under the color of federal law," not state law, and to the extent that his claims were construed as arising under *Bivens*, private companies managing prisons under contract with the federal government are not proper *Bivens* defendants. Defendants also argued that there were no factual disputes as to each of Naranjo's three remaining claims. Accepting defendants' arguments, the district court granted summary judgment. Naranjo appealed, and we consolidated the two appeals.[2]

## II.

We first review the denial of Naranjo's motion for appointment of counsel. The denial of a motion for appointment of counsel in a civil rights case is immediately appealable as a collateral order.[3] *Robbins v. Maggio*, 750 F.2d 405, 413 (5th Cir. 1985). We review for abuse of discretion. *Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007).

---

[2] In granting Naranjo's motion for leave to proceed *in forma pauperis* on appeal from summary judgment, we instructed the parties to brief the question "whether an entity that contracts not with the federal Bureau of Prisons (BOP), but rather contracts with Reeves County, Texas, to manage the Reeves County Detention Center in accordance with the County's contract with the BOP, can be subject to § 1983 liability."

[3] This rule is contrary to the rule in the majority of circuit courts, *see Marler v. Adonis Health Prods.*, 997 F.2d 1141, 1142 nn.1–3 (5th Cir. 1993) (collecting cases), but the Supreme Court has repeatedly declined to resolve the split, *see Welch v. Smith*, 484 U.S. 903 (1987) (denying certiorari); *Henry v. Detroit Manpower Dep't*, 474 U.S. 1036 (1985) (same).

No. 13-50541

**A.**

A § 1983 plaintiff, even if demonstrably indigent, is not entitled to appointed counsel as a matter of right. *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982). First, an indigent plaintiff is ineligible for appointment of counsel unless the district court determines that his claims meet a threshold level of plausibility. Under the statute governing *in forma pauperis* proceedings, the district court must dismiss a case if it determines, at any time, that the plaintiff has only frivolous claims for relief. *See* 28 U.S.C. § 1915(e)(2)(B). The barrier to frivolous suits "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation," and "[d]ismissals on th[is] ground[] are often made *sua sponte* prior to the issuance of process." *Neitzke v. Williams*, 490 U.S. 319, 324, 325 (1989). If the plaintiff is a prisoner, the district court must formally review the complaint immediately after it is filed and dismiss any claims it deems frivolous. *See* 28 U.S.C. § 1915A(b)(1). In Naranjo's case, after "[p]reliminary examination of the Complaint," the district court determined "that summary dismissal [wa]s not appropriate."

Second, even when a plaintiff has nonfrivolous § 1983 claims, a "trial court is not required to appoint counsel . . . unless the case presents exceptional circumstances." *Ulmer*, 691 F.2d at 212. Though we have declined to articulate a "comprehensive definition of exceptional circumstances," *id.* at 213 (quoting *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982)), we have supplied factors that a district court should consider in determining whether exceptional circumstances warrant the appointment of counsel, including:

> 1. the type and complexity of the case; 2. the petitioner's ability to present and investigate his case; 3. the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and in cross-examination; and 4. the likelihood that appointment will benefit the petitioner, the court,

8

and the defendants by shortening the trial and assisting in just determination.

*Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992) (internal quotation marks and citation omitted). District courts may also consider the extent of a plaintiff's attempts to secure private counsel independently. *See Jackson v. Cain*, 864 F.2d 1235, 1242 (5th Cir. 1989).

In ruling on Naranjo's second motion for appointment of counsel, the district court found that Naranjo had "demonstrated the exceptional circumstances to warrant the appointment of counsel." It reached that finding by weighing the fact Naranjo could not, as a prisoner, view and respond to discovery that defendants had filed under seal and the fact that litigating Naranjo's claims would likely involve conflicting testimony. The district court concluded that, "[g]iven the limitations facing Plaintiff, . . . the appointment of counsel will expedite the lawsuit, promote judicial economy, and is ultimately justified under the circumstances."

As noted above, despite these findings, the district court denied the motion because funding was unavailable and "there are no attorneys in the area willing or able to take the case *pro bono*." Defendants, perhaps sensing the fragility of that ruling in their favor given that the district court's findings supported the opposite outcome, challenge the underlying findings. Because defendants challenge the underlying factual findings, we review those findings for clear error. *See Rice v. Astrue*, 609 F.3d 831, 836 n.22 (5th Cir. 2010).

The district court did not clearly err in finding that the existence of sealed discovery weighed in favor of appointing counsel. The discovery filed under seal included a schematic of the original design of Reeves III, the names of corrections officers assigned to the Reeves III recreation yard between April 2009 and January 2010, and documents reflecting the conversion of Reeves III day rooms into dormitories. Defendants argue that because "the sealed

documents are of very limited value in this case," the district court was wrong to invoke them in finding that exceptional circumstances existed warranting appointment of counsel. Defendants also contend that Naranjo can acquire all of the information he needs by cross-examining a fire warden and a representative of the BOP, and that security concerns would likely prevent even an appointed attorney from reviewing the sealed documents.

We decline to second-guess the district court's determination as to the importance of the sealed documents relative to other sources of information. We note in addition that, at the evidentiary hearing, defendants' counsel questioned Warden Thompson about one of the sealed documents in the context of the overcrowding claim. It is difficult to envision how Naranjo possibly could have conducted a thorough cross-examination without access to that document.[4] Finally, in light of the magistrate judge's comment at the evidentiary hearing that "these documents will be kept under seal at this time, and they may be reviewed by an attorney or expert, should this case go to a jury trial," it is unclear whether the sealed documents will remain unreviewable even if an attorney is appointed, as defendants suggest.

Likewise, the district court did not clearly err in finding that the likelihood of conflicting testimony weighed in favor of appointing counsel. Defendants challenge this finding on the ground that Naranjo "demonstrated sufficient ability to investigate and present evidence." Defendants are correct that many of Naranjo's filings reflect basic competency in legal analysis and discovery procedure. In previous cases, we have indeed looked to that sort of

---

[4] Indeed, this aspect of the evidentiary hearing rendered it almost Kafkaesque. Naranjo was denied an opportunity to review documents filed under seal, and then when one of those documents was discussed at the hearing, he was expected to cross-examine the witness who discussed it or present contrary evidence. It is little wonder that he could not do either.

track record in denying appointment of counsel. *See, e.g., Jackson v. Dall. Police Dep't*, 811 F.2d 260, 262 (5th Cir. 1986) (noting plaintiff had "done a very credible job in presenting motions and in filing supporting papers," having "filed ten different items"). But the record also discloses quite a few mishaps and wire-crossings resulting from Naranjo's inexpert motions practice. And Naranjo was essentially a spectator at the evidentiary hearing, repeatedly stating he could not fully participate because he was not a trained attorney. All told, we cannot say that the district court clearly erred in finding that "appointment of counsel . . . [wa]s ultimately justified under the[] circumstances" in part because of the likelihood that Naranjo's claims would involve conflicting testimony that he would be unable to present effectively without an attorney.

Defendants also challenge the district court's finding that exceptional circumstances existed warranting the appointment of counsel by arguing that Naranjo's claims are "neither factually nor legally complex." Defendants have on their side the magistrate judge's assessment, in response to Naranjo's earlier motion for appointment of counsel, that "the present cause of action is not complex." However, proceedings developed significantly between the first and second motions for appointment of counsel, and even if the merits of Naranjo's claims are not complex, the district court was free to weigh other factors more heavily in finding that exceptional circumstances existed. *See Parker*, 978 F.2d at 193 (directing district court to appoint counsel, without addressing the complexity of the case, because "without counsel, [Appellant] would have to investigate by himself the prison's policies and employees of the very jail where he is incarcerated"). The district court did not clearly err in finding that Naranjo "demonstrated the exceptional circumstances to warrant the appointment of counsel," or in weighing any of the factors we have directed courts to consider when considering such an appointment.

No. 13-50541

Once a district court finds that a particular case presents exceptional circumstances, it abuses its discretion by declining to appoint counsel. *See Ulmer*, 691 F.2d at 212 ("The trial court is not required to appoint counsel for an indigent plaintiff asserting a claim under § 1983 unless the case presents exceptional circumstances." (citations omitted)).    District courts have "considerable discretion" in deciding whether to appoint counsel. *Branch*, 686 F.2d at 267.    But that discretion ends once exceptional circumstances are found.  The exceptional circumstances test is a means of identifying those plaintiffs with nonfrivolous claims who, if uncounseled, may not receive a meaningful hearing.  Having identified such a plaintiff, a district court cannot then send him off on his own consistent with its duty to advance the proper administration of justice.

**B.**

District courts seeking to appoint counsel to represent an indigent plaintiff have a range of means available to them, including offering compensation in some districts and appealing to willing *pro bono* counsel in many others. *See* Part II.C., *infra.*  The district court in this case stated that it had pursued those avenues and was ultimately unsuccessful.  When these options fail, however, courts also have inherent power to compel counsel to accept an uncompensated appointment.  As the district court recognized and as defendants point out on appeal, compulsory appointments are not authorized by 28 U.S.C. § 1915(e)(1), the statutory provision governing appointment of counsel in *in forma pauperis* proceedings. *Mallard*, 490 U.S. at 298.[5]  But *Mallard* limited its holding to the statute, *id.* at 309–10, having determined that the statutory verb "request" encompasses only non-

---

[5] *Mallard* references 28 U.S.C. § 1915(d), which was later redesignated as 28 U.S.C. § 1915(e). *See* Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, 1373–74.

No. 13-50541

compulsory appointments, *id.* at 301–02.  The possibility of extra-statutory authority to make compulsory appointments was expressly left open: the Court "d[id] not reach the question whether the federal courts have inherent authority to order attorneys to represent litigants without pay."  *Id.* at 308 n.8. We hold that they do, and that the district court abused its discretion by not considering that option.

Simply by virtue of having been created, federal courts are vested with inherent power to take action "essential to the administration of justice." *Michaelson v. United States*, 266 U.S. 42, 65–66 (1924).  Accordingly, "[c]ourts have (at least in the absence of legislation to the contrary) inherent power to provide themselves with appropriate instruments required for the performance of their duties."  *In re Peterson*, 253 U.S. 300, 312 (1920).  "Action taken by a federal court in reliance on its inherent powers must somehow be indispensable to reaching a disposition of the case."  *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1362 n.20 (5th Cir. 1978).

Federal courts' inherent powers undoubtedly encompass the appointment of counsel in at least some circumstances.  For instance, a court's power to appoint counsel for a criminal defendant, "even in the absence of a statute, cannot be questioned."  *Powell v. Alabama*, 287 U.S. 45, 73 (1932). This power is rooted in the Sixth Amendment, but courts have also characterized it as an exercise of inherent power.  *See, e.g.*, *United States v. Accetturo*, 842 F.2d 1408, 1412 (3d Cir. 1988).  Indeed, multiple districts in this circuit have recently held that courts possess inherent power to appoint counsel for an insolvent corporate criminal defendant, even though the Sixth Amendment and Criminal Justice Act do not authorize such appointments. *United States v. Burk*, No. EP-14-CR-240-DCG, 2014 WL 2800759, at \*9–13 (W.D. Tex. June 18, 2014); *United States v. JB Tax Prof'l Servs., Inc.*, No. 13-127, 2013 WL 6004047, at \*5 (E.D. La. Nov. 13, 2013).  Outside the context of

13

criminal defense, federal courts have inherent power to appoint counsel to prosecute criminal contempt proceedings, *Young v. U.S. ex rel. Viotton et Fils S.A.*, 481 U.S. 787, 793 (1987), to serve as guardian ad litem for a minor whose interests diverge with those of his general representative, *Hoffert v. Gen. Motors Corp.*, 656 F.2d 161, 164 (5th Cir. Unit A Sept. 1981), and to represent a victorious civil plaintiff against trial counsel who seeks to withdraw judgment funds paid into the court's registry in satisfaction of the judgment, *Karim v. Finch Shipping Co.*, 374 F.3d 302, 307 (5th Cir. 2004).

Courts' inherent power to appoint counsel has long included the power to compel an attorney to take a case, at least in the criminal defense context. "Attorneys are officers of the court, and are bound to render service when required" to do so by an appointment issued under a court's extra-statutory powers. *Powell*, 287 U.S. at 73; *see also FTC v. Super. Ct. Trial Lawyers Ass'n*, 493 U.S. 411, 453 (Blackmun, J., concurring in part and dissenting in part) (suggesting that boycott by criminal defense attorneys wielded no market power because courts "had the power to terminate the boycott at any time by requiring any or all members of the District Bar . . . to represent indigent defendants *pro bono* . . . on pain of contempt"). The inherent power to compel counsel to represent criminal defendants is grounded in necessity; without it, "[t]he court's responsibility for the administration of justice would be frustrated." *Accetturo*, 842 F.2d at 1413.

So too with the power to compel attorneys to represent indigent civil rights plaintiffs.[6] The possibility of such an appointment arises only when an

---

[6] No circuit court has directly addressed whether courts have inherent power to make compulsory appointments in the civil context. However, the language in *Mallard* leaving that issue unresolved has been invoked by the Third Circuit in an opinion holding that courts have inherent power to order unwilling attorneys to serve as uncompensated standby counsel for criminal defendants proceeding *pro se*. *See United States v. Bertoli*, 994 F.2d 1002, 1016–17 (3d Cir. 1993). At least one district court has squarely held, after exhaustive review of the

No. 13-50541

indigent plaintiff has colorable claims that will not receive a meaningful hearing without counsel (i.e. exceptional circumstances exist) and when all other options for making an appointment have failed.  Under such conditions, a court cannot carry out its duties without ordering an attorney to take the case.  "Even the most dedicated trial judges are bound to overlook meritorious cases without the benefit of an adversary presentation." *Bounds v. Smith*, 430 U.S. 817, 826 (1977).

The inherent power to make a compulsory appointment is also rooted in courts' duty to maintain the functioning of the civil justice system as a whole. "[T]he bar's monopoly over legal services entails obligations to court and society." *Bertoli*, 994 F.2d at 1018.  These obligations often take the form of ethical duties to the profession as opposed to legally enforceable requirements, but some bar associations give force to those ethical duties by mandating that attorneys perform a certain quantity of *pro bono* work for indigents each year, and the Supreme Court has approved of such arrangements.  *See Sup. Ct. of N.H. v. Piper*, 470 U.S. 274, 287 & n.22 (1985) (citing the mandatory *pro bono* plan of the El Paso Bar).  Courts have a critical role to play as well.  Inherent powers exist where necessary to serve the proper administration of justice. "The court's responsibility for the administration of justice would be frustrated were it unable to enlist or require the services of those who have, by virtue of

academic literature, that courts have inherent power to order counsel to represent indigent civil plaintiffs.  *See Bothwell v. Republic Tobacco Co.*, 912 F. Supp. 1221 (D. Neb. 1995).

The Ninth Circuit, in an unpublished decision, has held that a district court did not abuse its discretion by declining to make a compulsory appointment where counsel had refused to take the case, citing *Mallard* for the proposition that the district court "lacked the authority to require counsel to represent [the plaintiff]." *Cooper v. City of Ashland*, 187 F.3d 646 (Table), at *4 (9th Cir. 1999) (unpublished).  The *Cooper* opinion did not address inherent authority.  *See also Colbert v. Rickmon*, 747 F. Supp. 518 (W.D. Ark. 1990) (holding that courts have no inherent authority to make compulsory appointments in § 1983 cases).

15

their license, a monopoly on the provision of such services." *Accetturo*, 842 F.2d at 1413.[7]

Some courts and commentators have raised constitutional concerns with compelled *pro bono* appointments, particularly under the Fifth Amendment Takings Clause and the Thirteenth Amendment prohibition of involuntary servitude.[8] This circuit has expressly rejected these concerns. *See Dolan*, 351 at 672 (Fifth Amendment); *White v. U.S. Pipe & Foundry Co.*, 646 F.2d 203, 205 n.3 (5th Cir. Unit B May 1981) (Thirteenth Amendment).

Nor is it any argument against courts' inherent power to appoint counsel to represent indigent civil litigants that such power would be partially duplicative of the authority conferred by § 1915(e)(1) to "request an attorney" in *in forma pauperis* cases. "Statutory provisions may simply codify existing rights or powers." *Mallard*, 490 U.S. at 307. We hold that, where a district court has determined that exceptional circumstances warrant appointment of counsel and has unsuccessfully attempted to secure a non-compulsory appointment, the court may invoke its inherent power to order an attorney to represent an indigent civil rights litigant *pro bono*.

## C.

We emphasize that this is a power of last resort. Inherent powers "must be used with great restraint and caution." *Nat. Gas Pipeline Co. of Am. v.*

---

[7] Given the Article III roots of inherent powers, the Ninth Circuit has looked to British and early-Colonial history as evidence that courts have inherent power to make mandatory appointments. *See United States v. Dillon*, 346 F.2d 633, 636 (9th Cir. 1965). Though we have cited *Dillon* approvingly, *see Dolan v. United States*, 351 F.2d 671, 672 (5th Cir. 1965), subsequent scholarship has indicated that the relevant historical record is "murky." *Mallard*, 490 U.S. at 304 (citing David L. Shapiro, *The Enigma of the Lawyer's Duty to Serve*, 55 N.Y.U.L. Rev. 735, 749–62 (1980)).

[8] *See, e.g.*, *Colbert*, 747 F. Supp. at 522; Bruce Andrew Green, Note, *Court Appointment of Attorneys in Civil Cases: The Constitutionality of Uncompensated Legal Assistance*, 81 Colum. L. Rev. 366, 377–90 (1981).

No. 13-50541

*Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). We expect that occasions for mandatory appointments will be rare indeed. In the first place, exceptional circumstances warranting appointment of counsel are, by their very definition, exceptional. Second, even where exceptional circumstances warrant appointment of counsel, other options will be available in all but the rarest of cases, and a court should not invoke its inherent power unless it has exhausted all other options.

District courts seeking to appoint counsel have a number of resources at their disposal. Several of the district courts within our circuit maintain lists of attorneys willing to accept civil rights appointments *pro bono*; indeed, the Western District of Texas is among them.[9] The Southern District of Texas Chapter of the Federal Bar Association provides a similar service, as do numerous legal aid organizations throughout the circuit. Courts may use bar admission fees to compensate *pro bono* counsel, or at least reimburse their expenses,[10] and the Fifth Circuit does so along with some of its district courts.[11] Some attorneys may also be attracted by the possibility of recovering fees if they prevail. *See* 42 U.S.C. § 1988(b).

---

[9] U.S. Dist. Court for the W. Dist. Tex., *Pro Bono* Civil Appointments, http://www.txwd.uscourts.gov/ForAttorneys/SitePages/ProBonoCivilAppts.aspx. It is not clear from the order denying Naranjo's motion for appointment of counsel whether the district court consulted this list, but it is free to do so on remand. We note that the Western District is vast, and it may be that none of the attorneys who have volunteered to accept appointments could feasibly litigate a case in the Pecos Division. *See also* U.S. Dist. Court for the N. Dist. Tex., *Pro Bono* Civil Panel Information, http://www.txnd.uscourts.gov/pro-bono-civil-panel-information; U.S. Dist. Court for the Middle Dist. La., Civil *Pro Bono* Pilot Program (2015), http://www.lamd.uscourts.gov/civil-pro-bono-pilot-program; U.S. Dist. Court for the E. Dist. La., Resolution for Appointment of *Pro Bono* Counsel in Civil Cases (2014), http://www.laed.uscourts.gov/news/resolution-appointment-pro-bono-counsel-civil-cases.

[10] Admin. Office of the U.S. Courts, 13 Guide to Judiciary Policy § 1220(b)(6) (2015).

[11] U.S. Court of Appeals for the Fifth Circuit, Plan for Administration of Bench and Bar Fund § 3(e) (2014).

No. 13-50541

Moreover, attorneys have ethical obligations to represent their fair share of indigent clients that go beyond their duties to the court. In Texas, where Naranjo brought his case, these obligations are formalized in the Texas Disciplinary Rules of Professional Conduct, which highlight the "moral obligation of each lawyer" to provide legal services to those unable to pay[12] and require that attorneys accept court appointments absent good cause.[13] To the extent that attorneys commit to following these rules upon admission to the bar, "representation of indigents under court order, without a fee, is a condition under which lawyers are licensed to practice as officers of the court." *Dolan*, 351 F.2d at 672 (quoting *Dillon*, 346 F.3d at 635). It is not too much to expect that attorneys will accept these appointments as a matter of course, even if that burden falls most heavily on those practicing in areas where representation is hardest to find.[14] "Lawyers . . . have obligations by virtue of their special status as officers of the court," including "[a]ccepting a court's request to represent the indigent." *Mallard*, 490 U.S. at 310–11 (Kennedy, J., concurring).

For all these reasons, we trust that in all but the rarest of cases, courts will be able to locate and appoint willing counsel without resorting to mandatory appointments. Nevertheless, we take the district court at its word that willing *pro bono* counsel could not be found to take Naranjo's case "[g]iven the remote location of Pecos, Texas and its dearth of legal representation."

---

[12] Tex. Disciplinary R. Prof'l Conduct, Preamble; *see also* La. R. Prof'l Conduct 6.1; Miss. R. Prof'l Conduct 6.1.

[13] Tex. Disciplinary R. Prof'l Conduct 6.01; *see also* La. R. Prof'l Conduct 6.2; Miss. R. Prof'l Conduct 6.2.

[14] *Cf.* U.S. Dist. Court for the S. Dist. Tex., McAllen Div., Criminal Justice Act Plan § VI.A (2011) (requiring that all members of the Southern District of Texas Bar with offices in McAllen serve on the McAllen Criminal Justice Act panel).

No. 13-50541

Understandable as that predicament may be, where exceptional circumstances warrant the appointment of counsel, the dearth of willing attorneys simply is not a reason to deny a motion for appointment. *Branch*, 686 F.2d at 267 ("The district court erred in exercising its considerable discretion to appoint counsel under 28 U.S.C. § 1915(d)[15] by denying such appointment because of the unavailability of counsel."). Civil rights do not thin out at the city limits. If a court has exhausted its non-coercive means for making an appointment, it must consider invoking its inherent power to make a mandatory appointment.

When a court is weighing a mandatory appointment, it may take account of additional factors beyond those we have previously laid out for evaluating motions for appointment of counsel under § 1915(e)(1). *See Bradshaw v. U.S. Dist. Ct. for the S. Dist. Cal.*, 742 F.2d 515, 516–18 (9th Cir. 1984) (approving district court's consideration, in deciding not to make a mandatory appointment, of attorneys' assessment that the plaintiff's claims were meritless and that taking the case could subject them to discipline, as well as of the plaintiff's antagonistic behavior toward previous counsel). A court certainly should not order an attorney to accept an appointment that she has "good cause" to decline. *See* Tex. Disciplinary R. Prof'l Conduct 6.01. On remand, the district court may properly take account of such considerations along with any changes in Naranjo's circumstances that weigh against making an appointment.

## III.

Because the rule of our circuit is that denials of motions for appointment of counsel are immediately appealable, we have scant authority dictating the proper relief in a case such as this one where proceedings continued after the

---

[15] *See supra* note 5.

district court declined to appoint counsel, and we are asked to review not only that ruling, but also the subsequent entry of summary judgment. Because Naranjo's attempts to avoid summary judgment were hindered by the absence of counsel, we follow the practices of our sister circuits and vacate summary judgment without prejudice to its re-urging rather than reach the merits.

When a *pro se* litigant proceeds to trial after having been denied appointed counsel, his performance at trial is affected by that denial, and the denial is held erroneous on appeal, "[t]he ordinary remedy . . . is remand for retrial . . . with the assistance of recruited pro bono counsel." *Pruitt v. Mote*, 503 F.3d 647, 650 (7th Cir. 2007) (en banc). Similarly, where a denied motion for appointment of counsel is followed by a denied motion to amend the complaint, the Eleventh Circuit has indicated that a plaintiff should be afforded a renewed opportunity to amend his complaint on remand with the aid of counsel. *Smith v. Fla. Dep't of Corrections*, 713 F.3d 1059, 1065 (11th Cir. 2013). Closest to our case, where a motion for appointment of counsel is denied amidst discovery, and summary judgment is later entered against the plaintiff, the Third Circuit has vacated summary judgment and indicated that additional discovery should be allowed if counsel is appointed on remand. *Tabron v. Grace*, 6 F.3d 147, 158 (3d Cir. 1993).

Naranjo's ability to respond to a complex summary judgment motion was no doubt hindered by the denial of his motion for appointment of counsel.[16]

---

[16] Defendants' summary judgment motion argues a thorny question that they acknowledge "[n]o circuit has answered": whether private companies managing county-owned prisons housing federal prisoners are proper § 1983 defendants. The district court's summary judgment order in this case created a conflict within the Western District on that question. *See Alvarez v. Geo Grp., Inc.*, No. SA-09-CV-0299, 2010 WL 743752, at *2 (W.D. Tex. Mar. 1, 2010) (liability available under § 1983). Were we to address that question, we would likely need to seek input from the BOP. We do not wade into that thicket today, but have little trouble determining that when Naranjo did so, he would have been better off with the aid of counsel.

*See Tabron*, 6 F.3d at 151 ("During discovery, [plaintiff's] lack of resources and his unfamiliarity with discovery rules and tactics put him at a significant disadvantage."). "Because [summary judgment's] consequences are so severe, . . . we must always guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980). If the district court appoints counsel on remand, it must then conduct all subsequent proceedings anew, including allowing for reasonable additional discovery. *See Tabron*, 6 F.3d at 158.

## IV.

For the foregoing reasons, we VACATE summary judgment and the denial of Naranjo's second motion for appointment of counsel and REMAND for proceedings consistent with this opinion.